Virgin Islands has adopted. *Gittens, supra* at 148.

It is not required that the proffered expert has actually practiced in the defendant's community but it must be shown that the expert has practiced in a similar community. *Ives v. Redford,* 252 S.E.2d 315, 318 (Va.1979); Charles and Kramer, *supra,* § 29.03. Here too, an expert's actual experience in a technique or its universality dispenses with the locality requirement. *Gittens, supra* at 149.

We hold, therefore, that Cheek's experts are not automatically disqualified because they are specialists rather than general practitioners. It is, of course, incumbent upon Cheek to establish the witnesses' competency with respect to knowledge of the applicable standard of care as it is practiced in the Virgin Islands or a similar community. In the alternative, competency may be established upon a showing that either the treatment for bite wounds is universal or the expert has previously performed the treatment.

## IV. CONCLUSION

In conclusion, we hold that the acts of a patient in incurring an injury cannot be the basis of the medical malpractice defendant's contributory negligence defense. This defense is limited to the negligent acts of the patient which occur simultaneously with the malpractice. Mitigation of damages is the defendant's relief when subsequent acts of the patient aggravate the malpractice injury.

Moreover, we hold that a medical specialist is competent to testify as an expert against a general practitioner provided the witness has the requisite knowledge of the applicable standard of care as it is practiced in a community similar to the defendant's. Competency may also be established where the medical procedure at issue is either universal or the witness has previously performed it.

Irving APPEL, Michael Appel, and Gertrude Appel, as trustees for the Welling International Corporation Employees Pension Trust, Plaintiffs,

v.

KIDDER, PEABODY & CO. INC. and Angelo Grigoropoulos, Defendants.

No. 84 Civ. 7359 (EW).

United States District Court,
S.D. New York.

Feb. 14, 1986.

Jeffrey V. Boxer, New York City, for plaintiffs.

Shanley & Fisher, P.C., New York City, for defendant Kidder, Peabody & Co.; Matthew Farley, Brian McDonough, of counsel.

EDWARD WEINFELD, District Judge.

This action, centering about charges of securities fraud, has its inception in marital and family strife. Plaintiffs Irving and Gertrude Appel, husband and wife, and their son Michael are the trustees of the employee pension trust ("Trust") of the Welling International Corporation, a closely-held Connecticut corporation. The plaintiffs are all residents of the state of Connecticut, as are all the beneficiaries of the Trust. From July 1980 until sometime after January 1982, the assets of the Trust were maintained in a brokerage account with defendant Kidder, Peabody & Co. ("Kidder") in its New York office. Defendant Angelo Grigoropoulos is the divorced husband of Bonnie Appel, the daughter of Irving and Gertrude Appel, and now the general counsel of the Welling International Corporation. Grigoropoulos was married to Bonnie Appel in 1974, and was initially an employee of Welling.[1] In 1977 he became an account executive at Blythe Eastman Dillon, where he handled the investment account of the trust. In the spring of 1980, Grigoropoulos moved to Kidder, bringing with him the trust account. Plaintiffs allege that between July 1980 and January 1982 defendants engaged in "churning" the pension trust account, resulting both in a loss in the value of the trust's assets, and also in the charging of excess commissions. The complaint states causes of action under § 10(b) of the Securities Exchange Act of 1934,[2] as well as actions for misrepresentation, breach of contract, breach of fiduciary duty, and violations of the New York General Business Law. Kidder moves to dismiss or for partial summary judgment on the federal securities claims on statute of limitations grounds, and seeks an order compelling arbitration of plaintiffs' state law claims.

## STATUTE OF LIMITATIONS

 The 1934 Act does not provide a federal statute of limitations on claims brought under § 10(b); thus, in determining the statute of limitations issue, the Court must look to the law of the forum state,[3] including New York's borrowing statute,[4] whose purpose is not only to secure for resident defendants the benefit of the shortest statute of limitations, but also to prevent forum shopping by non-resident plaintiffs.[5] Kidder maintains that the applicable statute of limitations is the Connecticut two-year blue-sky limitations period; plaintiff maintains that the applicable statute is the six-year limitation period for fraud claims under New York law.

 The threshold question is whether the New York borrowing statute should be applied, and this determination depends upon where the cause of action accrued. For the purposes of the New York borrowing statute, the cause of action accrued

1. Grigoropoulos and Bonnie Appel were divorced sometime after the events at issue here; the date of the divorce is not a matter of record in this action.

2. 15 U.S.C. § 78j(b).

3. *UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 703–04, 86 S.Ct. 1107, 1112–13, 16 L.Ed.2d 192 (1966); *Cope v. Anderson*, 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947); *Sack v. Low*, 478 F.2d 360, 365 (2d Cir.1973).

4. N.Y.C.P.L.R. § 202:
 An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply. *See Arneil v. Ramsey*, 550 F.2d 774, 779 (2d Cir.1977).

5. *Antone v. General Motors Corp.*, 64 N.Y.2d 20, 27–28, 484 N.Y.S.2d 514, 517, 473 N.E.2d 742, 745 (1984); *Martin v. Julius Dierck Equip. Co.*, 52 A.D.2d 463, 384 N.Y.S.2d 479 (2d Dept.1976), *aff'd*, 43 N.Y.2d 583, 403 N.Y.S.2d 185, 374 N.E.2d 97 (1978).

where the loss was sustained.[6] Where, as here, the harm claimed is economic, the loss is sustained where the economic impact of the defendant's conduct is felt, usually but not invariably at the plaintiff's place of residence.[7]

Plaintiffs argue that the loss was sustained in New York, where the corpus of the trust was located, where the securities transactions at issue occurred, and "where all the operative conduct occurred." These facts, undisputed as they are, are not relevant to the determination of the legal issue, which is where the economic loss, if any, resulting from defendant's alleged conduct was felt. The pension trust at issue here was the source of pensions to the officers and employees of a small, closely-held corporation. In 1981, according to the trust's filings with the Internal Revenue Service, there were eighteen beneficiaries, all of whom it is conceded were residents of the State of Connecticut. Moreover, the trust's financial statements for the 1981 fiscal year showed that plaintiffs Irving, Gertrude, and Michael Appel, along with Bonnie Appel and another member of the Appel family, were beneficiaries of 81.5% of the trust's assets; the affidavit of Irving Appel concedes that the members of the Appel family were the beneficiaries "of in excess of 90% of the value of the trust assets."[8]

Upon this record of undisputed fact, it is clear that any financial harm sustained by the trust was felt in the State of Connecticut and, not, as plaintiffs maintain, at the offices of Kidder, Peabody & Co. in New York.[9] Plaintiffs rely upon *Maiden v. Biehl*,[10] in which the location of the trust corpus, New York, was found to be the locus of harm. Although at the time of the decision in *Maiden*, all the trust beneficiaries were residents of a single state, this was fortuitous; they had previously resided in several different jurisdictions, as had the trustee. As Judge Stewart wrote, "the thrust of the inquiry" is "who became poorer, and where did they become poorer" as a result of the conduct complained of.[11] In this case, the clear answer is that the trust beneficiaries, predominantly the plaintiffs and members of their family, became poorer in Connecticut, if anywhere, and under the New York borrowing statute it is Connecticut's limitation period which applies.

Kidder next argues that Connecticut's two-year blue-sky limitation period should govern,[12] while plaintiffs maintain that the more appropriate period is the three-year limitation on common-law fraud claims.[13] The District Court for the District of Connecticut has repeatedly held that the two-year period is the appropriate limitation on § 10(b) claims under Connecticut law,[14] as have the other federal courts which have considered the issue.[15] Con-

---

6. *Stafford v. International Harvester Co.,* 668 F.2d 142, 149 (2d Cir.1981); *Industrial Consultants Inc. v. H.S. Equities,* 646 F.2d 746, 747 (2d Cir.), *cert. denied,* 454 U.S. 838, 102 S.Ct. 145, 70 L.Ed.2d 120 (1981); *Avagliano v. Sumitomo Shoji America, Inc.,* 614 F.Supp. 1397, 1404–05 (S.D.N.Y.1985); *Maiden v. Biehl,* 582 F.Supp. 1209, 1212 (S.D.N.Y.1984).

7. *Industrial Consultants,* 646 F.2d at 747; *Sack v. Lowe,* 478 F.2d 360, 368 (2d Cir.1973).

8. Affidavit of Irving Appel, at ¶ 14.

9. *See Freschi v. Grand Coal Venture,* 551 F.Supp. 1220, 1225–26 (S.D.N.Y.1982) (residence of trustee held locus of harm to trust where trustee was also trust's major beneficiary).

10. 582 F.Supp. 1209, 1217–18 (S.D.N.Y.1984).

11. 582 F.Supp. at 1218.

12. *See* Conn.Gen.Stats. § 36–498.

13. *See* Conn.Gen.Stats. § 52–577.

14. *See Dandorph v. Fahnestock & Co.,* 462 F.Supp. 961 (D.Conn.1979); *Long v. Abbott Mortgage Corp.,* 424 F.Supp. 1095, 1097 (D.Conn.1976); *Hitchcock v. De Bruyne,* 377 F.Supp. 1403 (D.Conn.1974).

15. *See Maiden v. Biehl,* 582 F.Supp. 1209, 1213–14 (S.D.N.Y.1984); *Campbell v. Upjohn,* 498 F.Supp. 722, 726 (W.D.Mich.1980), *aff'd,* 676 F.2d 1122 (6th Cir.1982). Plaintiffs' reliance upon *Klock v. Kuhn Loeb Inc.,* 584 F.Supp. 210 (S.D.N.Y.1984), and *Bache Halsey Stuart Inc. v. Namm,* 446 F.Supp. 692 (S.D.N.Y.1978) is misplaced. Both cases held simply that the claims at issue were barred whether the two-year or three-year statute was applied. *See Klock,* 584 F.Supp. at 216 n. 9; *Bache,* 446 F.Supp. at 697–98.

necticut having chosen to enact a statute of limitations specifically directed to securities claims, it should be given effect in preference to the general common-law fraud statute urged by plaintiffs.

██ Having determined that it is the two-year period set by Connecticut law which determines the limitation of this action, it is federal law which determines when the period began to run.[16] As our Court of Appeals has said with respect to the commencement of the limitation period for actions under § 10(b):

> the time from which the statute begins to run is not the time at which the plaintiff becomes aware of all of the various aspects of the alleged fraud, but rather the statute runs from the time at which plaintiff should have discovered the general fraudulent scheme.[17]

It is not disputed that throughout the period in which plaintiffs allege that "churning" was taking place in the trust's account at Kidder, from July 1980 through January 1982, the trustees were receiving monthly statements and daily confirmation slips which accurately reflected the trading activity in the account. Plaintiff Irving Appel, the active trustee, states that "[d]uring 1980 and 1981, I traveled considerably, and obviously during this period of time did not review the daily confirmations or month-end statements that were being sent.... It was not until the Spring of 1984, as a matter of fact, when I had an opportunity to review and analyze the statements on a month by month basis."[18] Although Irving Appel, as the active trustee, signed the trust's tax return in November 1981, and reviewed at that time the trust's assets, he states that "[w]hile I saw that there was a

diminution, it was not apparent to me at this time that the diminution occurred as a result of overtrading ..., churning, ... excessive commissions, or anything like that."[19]

██ On this basis, plaintiffs argue that "the statute would begin to run at this time, from November 30, 1981, or the end of the month."[20] Even if this proposition were accepted, the federal causes of action would be barred under the applicable two-year statute of limitations; the action was not commenced until October 19, 1984. But the uncontested factual record warrants the conclusion that, as a matter of law, the statute began to run at an earlier date. As our Court of Appeals has said, "the statute commences to run when the plaintiff has actual knowledge of the alleged fraud or knowledge of facts which in the exercise of reasonable diligence should have led to actual knowledge."[21]

Plaintiffs do not contend that the churning engaged in by Kidder was conducted in a secretive fashion; according to the complaint, "[t]he defendants entered into in excess of 300 transactions, generating in excess of $250,000 in a nineteen month period. The portfolio was turned over more than nineteen times."[22] It is not disputed that each of these trades was reflected on the daily confirmations and monthly statements sent to and received by the plaintiffs. Irving Appel's argument that his frequent travels prevented him from reading the monthly statements *for almost four years* does not alter the fact that reasonable diligence would have disclosed the allegedly excess trading in the account, which was detailed on the face of the confirmations and monthly state-

---

16. *Arneil v. Ramsey,* 550 F.2d 774, 780 (2d Cir. 1977); *Moviecolor Ltd. v. Eastman Kodak Co.,* 288 F.2d 80, 83 (2d Cir.), *cert. denied,* 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961).

17. *Berry Petroleum Co. v. Adams & Peck,* 518 F.2d 402, 410 (2d Cir.1975); *see also Stull v. Bayard,* 561 F.2d 429, 432 (2d Cir.1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978); *Arneil v. Ramsey,* 550 F.2d 774, 780–81 (2d Cir.1977); *Klein v. Bower,* 421 F.2d 338, 343 (2d Cir.1970).

18. Affidavit of Irving Appel, at ¶ 12.

19. *Id.*

20. Plaintiffs' Memorandum in Opposition, at 12.

21. *Stull v. Bayard,* 561 F.2d 429, 432 (2d Cir. 1977).

22. Complaint, ¶ 16.

ments.[23] If it is correct that Appel, who describes himself as the sole active trustee, did not review the confirmation slips and monthly statements issued by the asset manager of the trust, then this was sheer dereliction of duty, as it was on the part of the other trustees. Plaintiffs may not close their eyes and say they do not see what is perfectly obvious. By November 1981, which plaintiffs urge was the start of the limitation period, the trustees had received sixteen monthly statements, and would in the exercise of reasonable diligence long since have discovered churning at a rate which was allegedly turning over the entire portfolio once a month. Even allowing the liberal period of one year in which to discover from the confirmations and monthly statements any churning in the account, the statute of limitations began to run in July or August of 1981, and not in November, as plaintiffs claim. This action was filed in October 1984, and under the two-year limitation period is clearly time-barred. Defendant Kidder's motion to dismiss the plaintiffs' causes of action under the federal securities laws is granted.

## ARBITRATION OF STATE CLAIMS

The brokerage agreement between the trust and Kidder contained an arbitration clause requiring the submission to arbitration of "any controversy arising out of or relating to accounts of or transactions with" the plaintiffs. Kidder moves to compel arbitration of plaintiffs' claims of misrepresentation, breach of fiduciary duty, breach of contract, and violations of statutory duties under New York law. Plaintiffs contend that Kidder waived its right to arbitration by commencing in this court, before the filing of the present action by plaintiffs, an action for return of securities mistakenly delivered to plaintiffs by Kidder.[24]

■■■■ The short answer to this contention is that Kidder's commencement of an action, before the filing of the instant suit by plaintiffs, has nothing whatever to do with its right to arbitration under the agreement between the parties. Plaintiffs have cited to the Court no authority for the proposition that once a party commences litigation, at any time and for any claim, it has permanently waived its right to arbitrate any future disputes on unrelated matters with the same adversary. Nor can Kidder be said to have waived its right to arbitration by its conduct in this litigation. Kidder raised its claim for arbitration at the earliest possible time, upon initial motion to dismiss the complaint. Our Court of Appeals has repeatedly held that, "in view of the 'overriding federal policy favoring arbitration,' waiver 'is not to be lightly inferred.'" [25] Plaintiffs' claim of waiver must fail; the motion to compel arbitration of plaintiffs' state law claims to arbitration is granted.[26]

Accordingly, plaintiffs' federal causes of action will be dismissed as barred by the applicable statute of limitations; the parties are directed to proceed to arbitrate plaintiffs' state law claims.

So ordered.

---

**23.** *See Bache Halsey Stuart Inc. v. Namm,* 446 F.Supp. 692 (S.D.N.Y.1978) (receipt of confirmations and statements put claimants "clearly on notice of the volume of trading in their accounts" for statute of limitations purposes).

**24.** *Kidder, Peabody & Co. v. Welling Int'l Corp.,* 83 Civ. 8136 (RLO).

**25.** *Sweater Bee by Banff v. Manhattan Indus.,* 754 F.2d 457 (2d Cir.1985), *quoting Carcich v. Rederi A/B Nordi,* 389 F.2d 692, 696 (2d Cir. 1968); *see also Erving v. Virginia Squires Basketball Club,* 468 F.2d 1064 (2d Cir.1972).

**26.** Plaintiffs also argue in opposition to the motion to compel arbitration that their request for punitive damages, which may not be awarded by the arbitrators, prevents arbitration of their claims. This proposition would mean that any party seeking unilaterally to avoid an otherwise valid arbitration clause would need only to plead a claim for punitive damages. This is not the law. *Cf. Sweater Bee by Banff v. Manhattan Indus.,* 754 F.2d 457, 463 (2d Cir.1985) (loss of potential punitive damage remedy not prejudicial to party compelled to arbitrate).