Eleanor Mather Gibson
**GOODMAN, Plaintiff,**

v.

**SHEARSON LEHMAN BROTHERS,
INC. and Neil Goodman,
Defendants.**

No. 86 Civ. 5393 (JMW).

United States District Court,
S.D. New York.

Jan. 14, 1988.

A. Arnold Gershon, A. Arnold Gershon, P.C., New York City, for plaintiff.

Andrew Wittenstein, Friedman, Wittenstein & Hochman, New York City, for defendant Neil Goodman.

Thomas E. Hommel and Mary E. Reisert, Shearson Lehman Hutton Inc., New York City, for defendant Shearson Lehman Bros. Inc.

## MEMORANDUM AND ORDER

WALKER, District Judge:

In this action, plaintiff Eleanor Mather Gibson Goodman alleges violations of Section 10(b) of the Securities and Exchange Act of 1934 (the "Exchange Act"), as amended, 15 U.S.C. § 78j, and Rule 10b–5 promulgated thereunder, 17 C.F.R. 240.-10(b)–5, Sections 15(a)(1) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78o (a)(1) and 78t(a), and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d). Plaintiff also brings pendent state law claims of common law fraud, breach of contract, conversion, negligence and breach of fiduciary duties.

■ Plaintiff and defendant Neil Goodman ("Goodman"), New York residents, were married on May 9, 1975, and lived together as husband and wife until about October 1985. During most of that period, Goodman managed on plaintiff's behalf four accounts which were maintained at Shearson Lehman Brothers, Inc.'s ("Shearson") New York office. Two of plaintiff's accounts were joint accounts with Goodman; the other two were solely in her name. Plaintiff alleges that from 1977 to 1983 the defendants engaged in improper management of her accounts including "churning[1]," fraud, and conspiracy to defraud, resulting in substantial losses. She has brought this suit in an attempt to recover those funds.

Defendants bring this motion for summary judgment pursuant to Fed.R.Civ.P. 56, asserting that (1) most of plaintiff's claims are barred by the applicable statutes of limitations, (2) plaintiff's claims sounding in fraud fail to satisfy the requirements of Fed.R.Civ.P. 9(b), (3) there is no implied right of action under Section 15(a)(1) of the Exchange Act, and even if there were, Goodman was not acting as a "broker" under the Exchange Act, (4) the alleged fraud, based on "churning" and mismanagement of brokerage accounts, does not satisfy the "in connection with" requirement of § 10(b) of the Exchange Act, (5) the RICO claim is insufficient as a matter of law, (6) Shearson exercised no control over Goodman and therefore can have no derivative liability, (7) any remaining claims plaintiff may have against Shearson should be submitted to arbitration, and (8) the court, after granting summary judgment on the federal claims, should refuse to hear the remaining pendent state claims based on *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

## FACTUAL BACKGROUND

Following her marriage in 1975, plaintiff decided to open an account at Shearson and to designate Goodman as her agent. Accordingly, in late 1977 she completed a "Discretionary Account Information" sheet ("Information Sheet") which indicated that her investment objective was long term capital gains and which granted discretion to trade securities, purchase options, and sell covered calls. On November 29, 1977, plaintiff executed a "Third Party Limited Discretionary Authorization" form ("Authorization Form") which empowered Goodman to act as her agent and attorney in fact with respect to the accounts.[2] The Authorization Form includes an indemnity provision in favor of Shearson and obligates plaintiff to arbitrate all disputes with Shearson.

---

1. Churning is the practice whereby "a broker—acting in his own interests and against those of his customer—induces transactions in his customer's account 'which are excessive in size and frequency in light of the character of the account.'" *Carroll v. Bear, Stearns & Co.*, 416 F.Supp. 998, 1001 (S.D.N.Y. 1976) (citation omitted). More recently, the Second Circuit defined churning as "the excessive rate of turnover in a controlled account for the purpose of increasing the amount of commissions." *Armstrong v. McAlpin*, 699 F.2d 79, 90 (2d Cir.1983) (citations omitted).

2. Although the record does not contain Authorization Forms for each of plaintiff's accounts, Goodman did act as plaintiff's agent with respect to all of her accounts at Shearson, and his authority to act in such capacity is not challenged in this action. In her amended complaint, plaintiff concedes that she gave verbal authorization to Shearson for Goodman to manage her other accounts. (¶ 32.) At her deposition, plaintiff stated that she intended the Authorization Form to cover all her accounts. (Plt.'s dep. at 22–3.)

Commencing in November 1977, plaintiff began making deposits into her accounts. Goodman began actively trading securities once plaintiff's accounts were established. Plaintiff continued to deposit securities and cash into her accounts through at least 1983.

Plaintiff contends that Goodman followed a strategy antithetical to her goal of long term capital gains. Instead of pursuing a conservative investment program, Goodman, plaintiff alleges, purchased high risk securities and engaged in speculative transactions. Specifically, the amended complaint states that Goodman bought and sold options which were inconsistent with plaintiff's investment objective. Furthermore, many securities were allegedly held for less than one year, thereby precluding plaintiff from achieving long term capital gains.

The amended complaint also alleges that Goodman and Shearson churned plaintiff's accounts. Plaintiff claims that one of her individual accounts was churned or turned over more than 21 times in 1978 (*i.e.* trades totalling more than 21 times the value of the portfolio) and about seven times in 1980, the latter resulting in a volume of trades totalling approximately one million dollars. With respect to plaintiff's other individual account, it is alleged that the account was churned twenty times in 1980 and approximately fourteen times in 1981, resulting in a depletion of all the funds in that account. With respect to her joint accounts with Goodman, plaintiff contends that one was turned over about nine times in 1979, and the other more than six times in 1980 and ten times in both 1982 and 1983.

During the period that trading occurred in plaintiff's accounts, she regularly received a confirmation of each trade and a statement for each account. There is no contention that defendants concealed these reports from plaintiff. Indeed, plaintiff stated in her deposition that she was the only member of her household with a mailbox key and that she almost always brought in the mail. (Plt.'s dep. at p. 58). Furthermore, throughout the period under

dispute, plaintiff and Goodman filed joint tax returns in which capital losses were claimed and income from dividends was noted. Plaintiff contends, however, that Goodman on numerous occasions misled her as to the well-being of her accounts by informing her that he was building a "very strong position" and "that money would never be a problem." (Amended Complaint, ¶ 24.)

Marital difficulties between plaintiff and Goodman began in early 1985, and in October 1985, the parties separated and began living apart. In March 1986, Goodman commenced divorce proceedings in the New York Supreme Court, County of New York. Shortly thereafter, on July 9, 1986, plaintiff commenced this action.

## DISCUSSION

The Federal Rules authorize summary judgment where "there is no genuine issue as to any material fact ..." Fed.R.Civ.P. 56(c). A genuine dispute exists if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Although the burden is on the moving party to show that no relevant facts are in dispute, *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 444 (2d Cir.1980), the nonmoving party may not rely simply "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 12 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). Thus, this Court's responsibility in deciding a summary judgment motion is "to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight*, 804 F.2d at 11; *Anderson*, 106 S.Ct. at 2509–11. Of course, only a factual dispute over a material matter will prevent a court from granting summary judgment. *Quarles v. General Motors Corp.*, 758 F.2d 839, 840 (2d Cir.1985) (per curiam).

## A. Statute of Limitations

Defendants contend that most of plaintiff's causes of action are barred by the applicable statutes of limitations. To determine if defendants are correct, the Court must examine each of plaintiff's claims independently.

■ Plaintiff's first and second claims are based on defendants' violations of Rule 10b–5 and Section 10 of the Exchange Act. There is, however, no federal limitations period that applies to such claims. Consequently, the Court must look to the law of the forum state to determine the appropriate statute of limitations. In examining such state laws, a district court is bound to select the limitations period which best furthers the policies of the federal statute at issue. *Stull v. Bayard,* 561 F.2d 429, 431 (2d Cir.1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978); *Berry Petroleum Co. v. Adams & Peck,* 518 F.2d 402, 406 (2d Cir.1975).

New York's statute of limitations for actions based on common law fraud is customarily applied to allegations of fraudulent violations of the federal securities law. *Armstrong v. McAlpin,* 699 F.2d 79, 86 (2d Cir.1983); *Stull,* 561 F.2d at 431. That law provides that an action sounding in fraud must be brought within two years of discovery of such fraud or within six years of the date upon which the cause of action accrues, whichever is longer. C.P.L.R. §§ 203(f) and 213(8) (McKinney's Supp. 1988).

■ Although state law determines the applicable limitations period, it is federal law which governs when the period commences. *Arneil v. Ramsey,* 550 F.2d 774, 780 (2d Cir.1977). The six-year period commences on the date when a plaintiff with assumed knowledge of the fraud may bring suit. *Stull,* 561 F.2d at 432. With respect to the discovery prong of the statute, the period begins "to run when the plaintiff has actual knowledge of the fraud or knowledge of facts which in the exercise of reasonable diligence should have led to actual knowledge." *Stull,* 561 F.2d at 432. An objective standard is applied to this inquiry; that is, the statute starts to run when a person of ordinary intelligence would have suspected that he or she was being defrauded. *Armstrong,* 699 F.2d at 88; *Ingenito v. Bermec Corp.,* 441 F.Supp. 525, 554–55 (S.D.N.Y.1977). If at that point a person could have discovered the fraud with reasonable diligence, knowledge of the fraud will be imputed to the party. *Appel v. Kidder, Peabody & Co. Inc.,* 628 F.Supp. 153, 157 (S.D.N.Y.1986); *Stull,* 561 F.2d at 432. Thus, unless this Court concludes that a reasonable person would not have discovered the fraud until December 1985, as plaintiff contends, or until six years prior to the filing of the complaint, namely July 9, 1980, most of plaintiff's securities claims will be barred by operation of the six-year limit.

■ No issue of fact exists that plaintiff did not file suit within six years of when the fraud should have been apparent to her. Although she received confirmations of the trades that occurred in her accounts as well as account statements on a regular basis, she never examined a single one. Indeed, if, as plaintiff contends, one account was turned over in excess of 21 times in 1978, a significant number of confirmations would have been received in that year alone. Moreover, throughout the period at issue, plaintiff's tax returns claim significant capital losses. Even a cursory review of those returns would have alerted plaintiff that her accounts were not prospering. Plaintiff's assertion that she merely signed the returns without examining them will not suffice to alter when the limitations period commences. A party "may not close [its] eyes and say [she] do[es] not see what is perfectly obvious." *Appel,* 628 F.Supp. at 158. Finally, through 1983 plaintiff was depositing funds into her accounts without determining how well they were being managed.

By July 1980, plaintiff had received innumerable confirmation slips and account statements and had filed three tax returns claiming capital losses. If she had been exercising reasonable diligence in monitoring her accounts, there can be little doubt that plaintiff would have discovered the fraud before the middle of 1980. Indeed,

this case is quite similar to *Appel* where the court held that confirmation slips and monthly statements are sufficient to place a party on notice that an investigation is warranted. Although, as plaintiff argues, a trustee was responsible for managing the accounts at issue in *Appel,* the court did not base its holding on this fiduciary relationship. In addition, there is no contention that defendants concealed the monthly statements, trade confirmations, or tax returns from plaintiff.[3] Instead, plaintiff merely alleges that Goodman told her on unspecified dates that her accounts were being successfully managed. Such a contention without more will not toll the commencement of the limitations period. Accordingly, the Court grants defendants' motion to dismiss plaintiff's claims arising under the federal securities laws with respect to acts occurring prior to more than six years preceding the filing of the complaint or July 9, 1980.[4]

■ The sixth count of plaintiff's amended complaint alleges RICO violations by the defendants. The Supreme Court recently decided that civil RICO claims are subject to a four year limitations period. *Agency Holding Corp. v. Malley–Duff & Associates, Inc.,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). The amended complaint fails, however, to specify upon which predicate acts the RICO claims are based and is subject to dismissal, without prejudice to replead, on that basis. Accordingly, the Court need not decide at present whether plaintiff's RICO claims are time barred. For the same reason, the Court need not currently decide whether the RICO claims are insufficient as a matter of law, even though the defendants have advanced persuasive arguments on that score.

Defendants contend that plaintiff's claims under Section 15(a)(1) of the Exchange Act are also barred by the applicable statute of limitations. Because this Court concludes that there is no private cause of action under this section of the Exchange Act, *infra* pp. 1086–87, the Court need not address this issue.

B. *Failure To Plead Fraud with Particularity*

■ Fed.R.Civ.P. 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." In giving content to this requirement, courts have held that a complaint must specify:

(1) precisely what statements were made in what documents or oral misrepresentations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, (3) the context of such statements and the manner in which they misled the plaintiffs, and (4) what the defendants obtained as a consequence of the fraud.

*Moran v. Kidder Peabody & Co.,* 609 F.Supp. 661, 665 (S.D.N.Y.1985) (citations omitted), *aff'd without opinion,* 788 F.2d 3 (2d Cir.1986). Rule 9(b) serves three important purposes in securities fraud cases: first, it guarantees that a defendant will be informed of the actions upon which the allegations of fraud are based; second, it acts to protect a defendant's reputation by preventing a plaintiff from baldly alleging fraud; and third, it prevents strike suits. *Zola v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* [1987 Transfer Binder] Fed. Sec.Law.Rep. (CCH) ¶ 93,159 (S.D.N.Y. 1987), at p. 95,720 [available on WEST-LAW, 1987 WL 7742]; *Spooner v. Calcagno,* [1986–87 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶ 93,061 (S.D.N.Y.1986), at p.

---

**3.** Plaintiff contends in paragraph 19 of the amended complaint that certain calls were never listed on the trade confirmations or the monthly statements. Assuming plaintiff is correct, the Court would still conclude that her suit is largely barred by the statute of limitations. There was adequate information available to plaintiff to place her on notice that her accounts were not being managed as she desired.

**4.** Plaintiff alleges that "in 1976" she deposited $15,000 into an account at Shearson but cannot state the disposition of those funds. Amended Complaint, ¶ 30. Because this allegation is so insubstantial, the defendants have been unable to respond to it. This vague claim is stricken. In any event, it is clearly barred by the applicable statute of limitations.

95,281 [available on WESTLAW, 1986 WL 14975]; *Ross v. A.H. Robins Co., Inc.,* 607 F.2d 545, 557 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980).

Defendants contend that plaintiff's claims sounding in fraud, namely the unsuitable trades, churning, and RICO claims fail to satisfy this requirement. The Court, after considering the purposes of Rule 9(b) and after reviewing the amended complaint, or more precisely, trying to decipher its vague, overlapping and often confused claims, agrees. Indeed, the amended complaint miserably fails to meet even the generous standards of Fed.R.Civ.P. 8. Conspicuously absent are allegations concerning the amount of damages suffered or requested, and when trading in the various accounts ended.

Plaintiff's allegations concerning the unsuitable trades claim fail to meet the standard of specificity required by Rule 9(b). It is settled law in this circuit that "mere conclusory allegations to the effect that defendant's conduct was fraudulent or in violation of Rule 10b–5 are insufficient." *Shemtob v. Shearson, Hammill & Co., Inc.,* 448 F.2d 442, 444 (2d Cir.1971). Nevertheless, plaintiff's amended complaint is replete with such allegations. For example, throughout the complaint phrases such as "it was her understanding" (¶ 31), "as defendants well knew" (¶ 16), and "as the defendants well knew" (¶¶ 18, 25) are prevalent without specifying how and in what manner the relevant information was conveyed to the defendants. A defendant is unable to respond to such allegations unless a basis for its knowledge is pleaded with particularity. Moreover, the complaint frequently fails to specify the time and place of various communications. Instead, the complaint alleges that discussions between plaintiff and defendants occurred "[o]n various dates in 1976 and 1977" (¶ 13), and "[o]n many occasions before and after the opening of her accounts" (¶ 31). The most egregious shortcoming of the complaint is paragraph 24 which reads,

> On those occasions when the plaintiff inquired of defendant Goodman as to how the account was doing, he told her that all was well and that the value of her investments was increasing. Specifically, on numerous occasions he said that money would never be a problem and that they were building a very strong position.

A defendant in order to prepare a defense is entitled to know when alleged misrepresentations occurred. *Zola,* [1987 Transfer Binder] Fed.Sec.L.Rep. (CCH) at p. 95,721; *Mauriber v. Shearson/American Express, Inc.,* 546 F.Supp. 391, 394 (S.D.N.Y. 1982); *Groden v. Weilman,* [1986–87 Transfer Binder] Fed.Sec.Law.Rep. (CCH) ¶ 93,059 (E.D.N.Y.1986), at p. 95,274 [available on WESTLAW, 1986 WL 15365]; *Gross v. Diversified Mortgage Investors,* 431 F.Supp. 1080, 1087–88 (S.D.N.Y.1977). Furthermore, the complaint never addresses in what manner plaintiff's completion of the Information Sheet was a representation by Shearson and Goodman.[5]

Similarly, the amended complaint inadequately pleads the alleged conspiracy to defraud stated in paragraph 32. Through the use of phrases such as "throughout several months in 1986," "on one occasion," "[o]n another occasion, in 1978," and "in one case," the complaint fails to specify the dates and places of several allegedly fraudulent acts. The complaint also fails to detail the alleged benefits that Goodman received other than the allegedly unauthorized withdrawals.[6] Such bare allegations fail to satisfy the requirements of Rule 9(b). Indeed, throughout the entire paragraph, plaintiff

---

5. Although plaintiff in paragraph 38 of the amended complaint alleges that Goodman signed the document, his signature does not appear anywhere on it. (Exhibit 16 to Wittenstein Affidavit.)

6. For example, the complaint states "Pursuant to this conspiracy, Shearson was to obtain commissions from excessive trading, agreed to by defendant Goodman, in exchange for giving him financial benefits, including the power to make unauthorized withdrawals," and "Shearson gave various financial benefits to defendant Goodman. Included among these benefits was the power to withdraw funds from the plaintiff's accounts." (¶ 33).

makes one self-serving and conclusory allegation after another: she alleges that Shearson solicited trades without providing examples; she contends that Shearson owed her certain duties without specifying the basis of such claims; and she alleges that certain improper acts occurred without specifying how she was damaged thereby. Moreover, to the extent this paragraph relies on the rest of the complaint to plead that unsuitable trades were made, the claim is deficient for the reasons discussed above.[7]

To survive a motion to dismiss under Rule 9(b) with respect to a churning claim, a plaintiff must "plead and prove (1) that the trading in [her] account was excessive in light of [her] investment objectives, (2) that the broker exercised control over the account, and (3) that the broker acted with intent to defraud or with willful and reckless disregard for the interests of his client." *Levine v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 639 F.Supp. 1391, 1394 (S.D.N.Y.1986); *Moran*, 609 F.Supp. at 666; *Mauriber*, 546 F.Supp. at 394; *Zaretsky v. E.F. Hutton & Co., Inc.*, 509 F.Supp. 68, 74 (S.D.N.Y.1981). Although the amended complaint adequately pleads specific turnover ratios with respect to each of plaintiff's accounts, (¶¶ 21, 27, 30, and 33), it fails to specify the content of plaintiff's communications to defendants as well as when and to whom her investment objectives were conveyed. Rather, plaintiff simply alleges that the defendants knew that certain stocks, which were traded, were never meant to be traded and on many occasions she discussed her investment goals with Goodman and Shearson.[8] Any defendant would have great difficulty defending a case based on such vague allegations. *Heller v. Rothschild*, 631 F.Supp. 1422, 1424 (S.D.N.Y.1986) ("a plaintiff alleging fraud by churning should allege specifically what instructions he gave to the broker or other representative of the corporate defendant; to whom those instructions were given; on what dates they were conveyed; and whether they were oral, in writing, or both.")

The amended complaint attempts to satisfy the second and third elements of Rule 9(b) by alleging a conspiracy through which the plaintiff was defrauded. However, the Court has already explained the shortcomings of this allegation. Furthermore, the plaintiff has failed "to show the manner in which [s]he was damaged by the implementation of [the] deceptive … practice …" *Moran*, 609 F.Supp. at 665. Although plaintiff alleges that Goodman lacked authority to withdraw funds from her accounts, the complaint fails to specify any basis for this contention. Rule 9(b) requires more. Indeed, one of the checks that plaintiff specifically refers to in paragraph 33 was withdrawn from a joint account, yet plaintiff fails to explain why Goodman lacked authority to make that withdrawal. To the extent that the defendants have been able to respond to this allegation, they have presented evidence that such authority may have existed. (Shearson's Reply Memo at p. 3, n. 2; Goodman's Reply Memo at pp. 12–14.) Furthermore, the complaint contends that Goodman was allowed to withdraw funds from the accounts "for his own use," but it never specifies how those checks were misappropriated.[9]

The sixth claim of the amended complaint pleads RICO violations based upon

---

7. Defendants further contend that plaintiff's allegations fail to satisfy the "in connection with" requirement of § 10(b) of the Exchange Act. Although the defendants have made strong arguments that the allegations are deficient in this regard, the Court need not decide this issue at present given the failure to comply with Fed.R. Civ.P. 9(b).

8. For instance, paragraph 13 of the complaint reads,
   On various dates in 1976 and 1977, the plaintiff also had meetings with defendant Shearson where she discussed the subject of her investments. As a result of those meetings, Shearson too became aware of the value and nature of her assets and of her understanding that they would steer a conservative course in managing her investments.

9. Furthermore, two of the accounts which plaintiff contends were churned were joint accounts with her husband. Plaintiff fails, however, to explain why Goodman would churn his own accounts.

the allegations set forth in the first claim. The second claim, which apparently arises under Rule 10b–5, also relies on those allegations. Since the Court in examining the first claim concluded that those allegations are inadequately pleaded under Rule 9(b), the sixth and second claims of the amended complaint also fail to satisfy Rule 9(b). *Spooner*, [1986–1987 Transfer Binder] Fed. Sec.L.Rep. (CCH) at p. 95,282; *Mauriber*, 546 F.Supp. at 397.

### C. *Claim under § 15(a)(1) of the Exchange Act*

█ Plaintiff's third claim alleges that Goodman violated § 15(a)(1) of the Exchange Act which makes it unlawful for any broker to use the mails or any instrumentality of interstate commerce to effect any transactions in, or to induce the purchase or sale of, any nonexempted security unless the broker is registered with the Securities Exchange Commission. Defendants defend this claim by contending that there is no private cause of action under § 15(a)(1), and, even if there were, Goodman was not a "broker." Because the Court concludes that there is no private right of action under this section of the Exchange Act, the Court need not address defendants' second argument.

Although plaintiff argues that there is an implied cause of action under § 15(a)(1), the sole authority plaintiff cites for this proposition is *Opper v. Hancock Securities Corp.*, 367 F.2d 157, 158 (2d Cir.1966). While *Opper* permitted a private cause of action under § 15, the current validity of this holding was recently called into question: "[*Opper*] was rendered more than a decade before the Supreme Court set forth the test in *Cort v. Ash*, for implying a private right of action. Thus, the holding in *Opper, supra*, has not been followed." *Baum v. Phillips, Appel & Walden, Inc.*, 648 F.Supp. 1518, 1529 (S.D.N.Y.1986) (citations omitted). Indeed, no court which has considered the issue since *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), has implied a private right of action under § 15 or § 15(a). *Walck v. American Stock Exchange, Inc.*, 565 F.Supp. 1051 (E.D.Pa. 1981) (no implied cause of action under

§ 15), *aff'd on other grounds*, 687 F.2d 778 (3d Cir.1982), *cert. denied*, 461 U.S. 942, 103 S.Ct. 2118, 77 L.Ed.2d 1300 *reh'g denied*, 463 U.S. 1236, 104 S.Ct. 29, 77 L.Ed. 2d 1451 (1983); *Bull v. American Bank and Trust Co. of Pa.*, 641 F.Supp. 62 (E.D. Pa.1986) (no private right of action under § 15(a)(1)); *Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1313–14 (9th Cir.1982) (no private cause of action under § 15). For example, in *Walck* the court found that "[n]either the express language nor the legislative history of § 15 provides a basis for concluding that Congress intended to create a right of action for money damages." *Walck*, 565 F.Supp. at 1059.

Plaintiff has failed to persuade this Court to imply a private cause of action under § 15. Not only is there no indication that Congress intended that there be a private right of action for violations of § 15(a)(1) of the Exchange Act, but plaintiff does not even claim that she is "one of the class for whose *especial* benefit the statute was enacted." *Cort, supra*, 422 U.S. at 78, 95 S.Ct. at 2087 (emphasis in original). It is clear that when, as here, the first two factors of the *Cort* analysis are not met, "the remaining two *Cort* factors cannot by themselves be a basis for implying a right of action." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 580, 99 S.Ct. 2479, 2491, 61 L.Ed.2d 82 (1979) (Brennan, J., concurring). As noted above, courts addressing the issue since *Cort* have consistently refused to imply such a private right of action for § 15(a)(1) violations. Accordingly, plaintiff's third claim is dismissed.

### D. *Derivative Liability of Shearson*

In counts four and five of the complaint, plaintiff respectively alleges aider and abettor and controlling person liability against Shearson. However, because both counts are based on allegations which this Court has held are insufficiently pleaded under Rule 9(b), these claims must also fail.

### E. *State Law Claims*

Plaintiff alleges common law fraud, negligence, and breach of fiduciary duty in

count seven and breach of contract in count eight of the amended complaint. Because the federal claims have been dismissed subject to plaintiff's right to replead, the state law claims which are before the Court solely on the basis of pendant jurisdiction, are also dismissed. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). In the event of a repleading that includes the state law claims, the Court will address any motions directed to such claims. Since the statute of limitations for common law fraud is the same as that for fraudulent violations of the federal securities laws, the common law fraud element of count seven is dismissed as time barred to the extent based on acts occurring prior to July 9, 1980.

## CONCLUSION

Plaintiff's claims alleging fraudulent violations of the federal securities laws are dismissed as barred by the applicable statute of limitations to the extent based on acts which occurred prior to July 9, 1980. Because there is no implied cause of action under § 15(a)(1) of the Exchange Act, the third claim of the amended complaint is also dismissed.

The amended complaint is dismissed without prejudice to replead for failure to comply with Fed.R.Civ.P. 9(b). Plaintiff is granted twenty (20) days from the date hereof to replead her complaint in accordance with Rule 9(b). In repleading the complaint, plaintiff is barred by the applicable statute of limitations from requesting damages in any claim based upon the federal securities laws or common law fraud for acts which occurred prior to July 9, 1980.

SO ORDERED.