Jesus **NORNIELLA and Ruth Norniella, Plaintiffs,**

v.

**KIDDER PEABODY & CO., INC. and Ramon A. Almonte, Defendants.**

No. 86 Civ. 8707 (DNE).

United States District Court, S.D. New York.

Dec. 17, 1990.

Robinson Brog Leinwand Reich Genovese & Gluck, P.C., White Plains, N.Y. (Richard L. Weingarten, of counsel), for plaintiffs.

Shanley & Fisher, P.C., New York City (Matthew Farley, of counsel), for defendants.

### OPINION & ORDER

EDELSTEIN, District Judge:

Defendants have moved for partial summary judgment, to dismiss for failure to plead a cause of action pursuant to Fed.R. Civ.P. 12(b)(6) and for failure to plead fraud with particularity pursuant to Fed.R. Civ.P. 9(b), and to compel arbitration as to any remaining claims. For the following reasons: (1) defendants' motion for partial summary judgment is granted; (2) defendants' motion to dismiss plaintiffs' claims for failure to plead fraud with particularity pursuant to Fed.R.Civ.P. 9(b) is granted; and (3) defendants' motion to compel arbitration as to plaintiffs' remaining claims is granted.

### I. BACKGROUND

At the heart of this dispute is plaintiffs Jesus Norniella and Ruth Norniella's claim that defendants Kidder, Peabody & Co., Inc., ("Kidder") and Ramon A. Almonte "churned" plaintiffs' accounts. In January 1983, plaintiffs claim that defendant Almonte, a broker with defendant Kidder, gained their friendship and subsequently induced them to open three trading accounts with Kidder. Plaintiffs claim that Almonte fraudulently induced them to make a number of investments through the accounts and that Almonte consistently overestimated the value of the accounts. Although plaintiffs inquired as to the status of their accounts, plaintiffs claim that Almonte told them that the accounts were doing well.

Plaintiffs claims that they instructed Almonte to invest in safe, long-term investments because the money from the accounts was to be used for their retirement. According to plaintiffs, however, defendants used plaintiffs accounts to engage in short term bond trading, including the practice of day trading in bonds from Kidder's own inventory, and speculative stock trading. Plaintiffs admit having received confirmation slips for the transactions that took place and monthly account statements, but claim that the statements did not list the excessive commissions taken by defendants and were constructed so that plaintiffs could not figure out how much money was being lost.

Eventually, plaintiffs claim that they showed their account statements to a friend who informed them that money had been lost due to the churning of their accounts. When plaintiffs' attorney then attempted to contact Kidder, plaintiffs claim that Kidder attempted to cover up the fraud that had taken place. Plaintiffs then

instituted this action on November 13, 1986, claiming violations of Sections 10(b) and 20 of the Securities Exchange Act of 1934 (the "Exchange Act") 15 U.S.C. §§ 78j(b), and 78t, the Racketeering Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. 1962(c), and also asserting state law claims for common law fraud, breach of fiduciary duty, and negligent mismanagement. Defendants have moved for partial summary judgment to dismiss plaintiffs' Exchange Act claims arising from transactions prior to November 13, 1984 as being barred by the statute of limitations, to dismiss the remaining Exchange Act claims and RICO claims for failure to plead a cause of action pursuant to Fed.R.Civ.P. 12(b)(6) and failure to plead fraud with particularity pursuant to Fed.R.Civ.P. 9(b), and finally to compel arbitration as to any remaining claims.

## II. DISCUSSION

### A. Statute of Limitations

■ A party moving for partial summary judgment must establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law as to the claims that the party wishes to dismiss. Fed.R.Civ.P. 56(c). The moving party has the initial burden of establishing the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The non-moving party then has the burden of showing with specific facts that there is a genuine issue for trial. Fed.R. Civ.P. 56(e). In meeting this burden, the non-moving party may not rely on speculation and conjecture. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

■ Until recently, this Court looked to state law to determine the applicable statute of limitations for implied causes of action under the federal securities laws. However, in *Ceres Partners v. Gel Assoc.*, 918 F.2d 349 (2d Cir.1990), the Court of Appeals adopted a uniform statute of limitations of one year from discovery and no more than three years after the conduct

alleged to constitute a violation for claims brought under Sections 10(b) and 14 of the Exchange Act. *Id.* at 364. The Court of Appeals left "for the future all questions concerning retroactive application" of the court's decision to apply a uniform statute of limitations to such claims. *Id.*

The parties' briefs submitted before the Court of Appeals decision in *Ceres Partners v. Gel Assoc.* did not contest that the two year statute of limitations provided for under the law of Puerto Rico was applicable to the Exchange Act claims in this action. Given that the parties have not chosen to raise the issue of whether *Ceres Partners v. Gel Assoc.* should apply retroactively to plaintiffs' Section 10(b) claims in this action, this Court will apply the two year statute of limitations provided for under the law of Puerto Rico to both plaintiffs' Section 10(b) and Section 20 claims.

■ Although the parties do not contest the application of Puerto Rico's statute of limitations, the parties do contest when the two year limitations period began to run. The issue of when the statute of limitations begins to run is a matter of federal common law. *Arniel v. Ramsey*, 550 F.2d 774, 780 (2d Cir.1977); *Salgado v. Piedmont Capital Corp.*, 534 F.Supp. 938, 947 (D.P.R.1981). Under federal law, the statute of limitations begins to run "when the plaintiff has actual knowledge of the alleged fraud or knowledge which in the exercise of reasonable diligence should have led to actual knowledge." *Stull v. Bayard*, 561 F.2d 429, 432 (2d Cir.1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978). Nonetheless, when a claim for relief is stated against a defendant who has concealed the wrong alleged, the applicable statute of limitations will be suspended for the duration of the period of concealment. *Moviecolor Ltd. v. Eastman Kodak Co.*, 288 F.2d 80, 82–83 (2d Cir.), *cert. denied*, 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961).

■ In this action, it is undisputed that during the period that defendants were allegedly churning, plaintiffs received confirmation slips of every transaction and

monthly reports of all the activity in the accounts. When plaintiffs questioned one of their accounts because the balance was low, plaintiffs claim that Almonte misled them by stating that the value of the account was understated. Further, plaintiffs allege that defendants concealed their churning because defendants' commissions were not listed on the confirmation slips or monthly reports and therefore that plaintiffs could not have known, and should not be deemed to have known, of the fraud. Thus, plaintiffs argue that the statute of limitations could not begin to run until after January of 1985 or, in the alternative, that the question of whether plaintiffs had actual knowledge of the fraud and whether defendants concealed the fraud are questions of fact which require this Court to deny defendants' motion for partial summary judgment.

The core component of a churning claim is excessive trading activity. *See Newburger, Loeb & Co., Inc. v. Gross,* 563 F.2d 1057, 1069 (2d Cir.1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978). Plaintiffs claim that they opened the accounts in question to make safe long-term investments and that 169 transactions took place during the two years that plaintiffs had these accounts. Plaintiffs admit to having received both confirmation slips of the trades and monthly accounts which kept track of each trade that took place. Plaintiffs therefore received 169 confirmation slips, one for each transaction, and 24 monthly statements, in which every one of the transactions was recorded. Plaintiffs claim that they were unaware of the level of commissions being taken by defendants. However, it seems very unlikely that the client confirmation slips did not specifically state defendants' commission. Moreover, the amount of commissions being taken by defendants has nothing to do with the level of activity reflected in the confirmation slips and monthly statements. If significant trading was not consistent with plaintiffs' investment objectives, plaintiffs certainly could have determined from the confirmation slips and monthly statements that there was excessive activity in their account before November of 1984.

It is well settled that where the circumstances should indicate "to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him." *Armstrong v. McAlpin,* 699 F.2d 79, 88 (2d Cir.1983). Thus, in *Appel v. Kidder, Peabody & Co., Inc.,* 628 F.Supp. 153 (S.D.N.Y. 1986), plaintiffs who admitted receiving confirmation slips and monthly reports were deemed to have had a duty of inquiry as to their churning claims and thus such claims were deemed barred by the statute of limitations. *Id.* at 158.

Here, plaintiffs' duty of inquiry was triggered by the receipt of confirmation slips and monthly accounts detailing every trade, which the plaintiffs themselves claim was contrary to their investment objective. "Plaintiffs may not close their eyes and say they do not see what is obvious." *Appel, supra,* 628 F.Supp. at 158. Thus, even if the allegedly excessive commissions were not listed on the confirmation slips or monthly statements, plaintiffs' receipt of the number of confirmation slips alone and the number of transactions stated on the monthly reports should have made plaintiffs aware that the accounts were being handled inconsistently with plaintiffs' wishes. Accordingly, defendants motion for partial summary judgment is granted as to plaintiffs' Exchange Act claims arising out of transactions prior to November 13, 1984.

## B. Fed.R.Civ.P. 9(b)

■ Fed.R.Civ.P. provides:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

Rule 9(b) is a special pleading requirement contrary to the simplified pleading requirements adopted by the federal rules. *Ross v. A.H. Robbins Co.,* 607 F.2d 545, 557 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980), *reh'g denied,* 448 U.S. 911, 100 S.Ct. 3057, 65 L.Ed.2d 1140 (1980). The special pleading rule serves three purposes: (1) it assures

defendants of notice of the precise conduct with which they are charged and against which they must defend themselves; (2) it protects defendants from harm to their reputations that might occur as a result of being charged with serious wrongdoing; and (3) it serves, in securities litigation particularly, to diminish the possibility that plaintiffs will file suit as a pretext for the discovery of unknown wrongs. *Id.* at 557.

█ It is not sufficient for a plaintiff to make sweeping allegations and merely track the language of a federal statute. Rather, plaintiffs must specify:

> (1) precisely what statements were made in what documents or oral misrepresentations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Todd v. Oppenheimer & Co.*, 78 F.R.D. 415, 420–21 (S.D.N.Y.1978) (citation omitted). *See Moran v. Kidder Peabody & Co.*, 609 F.Supp. 661, 665 (S.D.N.Y.1985), *aff'd*, 788 F.2d 3 (2d Cir.1986). In the instant action, plaintiffs Exchange Act and RICO claims are based on defendants' alleged churning of plaintiffs' accounts. To establish a claim for churning, a plaintiff must plead and prove: (1) that the trading in the account was excessive in light of the investment objectives; (2) that the broker exercised control over the account; and (3) that the broker acted with intent to defraud or with willful or reckless disregard for the plaintiffs interests. *Moran, supra,* 609 F.Supp. at 666.

█ Plaintiffs' churning claim fails to plead two elements of such a claim with sufficient particularity. First, plaintiffs fail to plead with particularity that excessive trading has taken place. Plaintiffs rely on the number of transactions and speculation rather than pleading a measure of trading frequency as is customary when trying to establish that trading is excessive. *Id.* The most common measure of trading frequency, the turnover ratio, is not even alleged. Plaintiffs allegation that the trades were excessive is based solely on the number of transactions, speculation, and claims as to the approximate commissions that were being charged. Second, plaintiffs fail to plead that they abandoned control of the account to defendants. In fact, plaintiffs' complaint indicates that they had control; plaintiffs claim that they monitored their accounts and raised questions about the accounts with Almonte.

█ Plaintiffs also fail to allege claimed misrepresentations made by Almonte with sufficient particularity. In paragraph 25 of plaintiffs' complaint, plaintiffs list six alleged misrepresentations made by defendants but do not allege when or where they occurred, or the attendant circumstances or deception. Without such a context, it is difficult to see how or if plaintiffs were deceived or harmed. Therefore, plaintiffs Exchange Act and RICO claims based on defendants' alleged churning and misrepresentations have not been plead with sufficient particularity to satisfy Rule 9(b). Accordingly, defendants' motion to dismiss plaintiffs' Exchange Act and RICO claims pursuant to Rule 9(b) is granted.

## C. Arbitration

Plaintiffs signed agreements with defendant Kidder which contained an arbitration clause requiring that any controversy or claim arising out of or related to the accounts would be settled by arbitration. It is uncontested that plaintiffs' state law claims are subject to binding arbitration. Accordingly, defendants motion to compel arbitration of plaintiff's state law claims is granted.

## III. CONCLUSION

Defendants' motion for partial summary judgment dismissing plaintiffs' Exchange Act claims arising before November 13, 1984 is granted; defendant's motion to dismiss plaintiffs' remaining Exchange Act and RICO claims pursuant to Rule 9(b) for failure to plead fraud with sufficient particularity is granted; the parties are directed

**630**

to proceed to arbitrate plaintiffs' state law claims.

SO ORDERED.