**Kay N. BROWN, et al., Plaintiffs,**

**v.**

**The HUTTON GROUP,
et al., Defendants.**

**No. 89 Civ. 611 (WCC).**

United States District Court,
S.D. New York.

June 10, 1992.

See also 795 F.Supp. 1307.

1318

Beigel & Sandler, Ltd., P.C., New York City, and Chicago, Ill. (Elizabeth M. Toll, of counsel), for plaintiffs.

Spengler Carlson Gubar Brodsky & Frischling, New York City (Richard P. Swanson, of counsel), Smith, Gill, Fisher & Butts, P.C., Kansas City, Mo. (Irvin V. Belzer, Daniel R. Young, of counsel), for defendants, Indian Wells Production Co., Indian Wells Oil Co. and Hutton/Indian Wells 1983 Energy Income Fund, Ltd.

Skadden, Arps, Slate, Meagher & Flom, New York City (Edward J. Yodowitz, Robert L. Meyers, of counsel), for defendants The E.F. Hutton Group, Inc., E.F. Hutton & Co., Inc., Hutton Energy Services II, Inc., Shearson Lehman Hutton, Inc.

## OPINION AND ORDER

### WILLIAM C. CONNER, District Judge:

Plaintiff investors charge defendants with fraudulent conduct in connection with the sale of interests in an oil and gas limited partnership. Plaintiffs allege as a first cause of action "Prospectus and Brochure Fraud" under § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"). Second Amended Complaint ¶¶ 6–35. Plaintiffs also assert claims of common law fraud against all defendants and a breach of fiduciary duty against defendant E.F. Hutton Group. Defendants have moved to dismiss plaintiffs' claims for failure to state a claim pursuant to Rule 12(b)(6), Fed.R.Civ.P. and for failure to plead fraud with particularity pursuant to Rule 9(b), or, in the alternative, for summary judgment pursuant to Rule 56(b).[1]

### Background

Plaintiffs are investors in the Hutton/Indian Wells 1983 Energy Income Fund, Ltd., a limited partnership designed to generate income through the purchase and management of oil and gas producing properties. The partnership has failed to produce any real profits, and plaintiffs brought suit, originally before Judge Walker, against the corporate parties allegedly responsible for organizing and promoting the Partnership and selling interests therein. Defendants include: Hutton Energy Services II, Inc., one of the co-general partners; E.F. Hutton & Co., Inc.; The E.F. Hutton Group, parent of E.F. Hutton & Co. and Hutton Energy; Shearson Lehman Hutton, Inc., recent acquirer of Hutton and its subsidiaries, as well as the partnership, Indian Wells Production Company, the co-general partner, and its parent company, Indian Wells.

In the earlier proceeding before Judge Walker, the Court granted defendants' motions for summary judgment and for dismissal pursuant to Rule 9(b) and dismissed the Amended Complaint.[2] Judge Walker found that the Amended Complaint alleged two distinct categories of fraud from which all claims arose: (1) that the offering materials misrepresented the risks involved in this venture and (2) that the defendants knew from the inception that the limited partnership was an economic sham and doomed to certain failure. *Brown*, 735 F.Supp. at 1200–02. Judge Walker first addressed the misrepresentation claim, granting defendants summary judgment and dismissing all of plaintiffs' claims re-

---

**1.** Both plaintiffs and defendants have submitted one affidavit in support of their arguments. On a motion to dismiss the Court could not consider these submissions. Although the affidavits are of only tangential significance to the Court's ruling on the instant case, the Court will assess plaintiffs' claims from the standpoint of summary judgment so as to allow consideration of the affidavits. Of course, this still allows the Court to dismiss plaintiffs' claims on the basis of the pleadings or pursuant to Rule 9(b), which functions as an independent requirement of particularity addressed to the face of the pleadings.

**2.** *See Brown v. E.F. Hutton Group,* 735 F.Supp. 1196 (S.D.N.Y.1990).

garding misrepresentation in the offering materials.

Judge Walker then proceeded to dismiss, for failure to plead with the requisite particularity, plaintiffs' remaining Section 10(b) claim which alleged that the defendants knew that the investment was "fatally flawed" and thus was an economic sham from its inception. *Id.* at 1202–05. Plaintiffs were, however, granted a limited right to replead:

> [T]he Court will grant plaintiffs leave to replead in order to allege some such specific, *conclusive* facts. But the Court wishes to emphasize that it has serious doubts regarding plaintiffs' ability to plead such facts. Plaintiffs have submitted their complaint twice already and have not yet come close to alleging the sort of damning facts to which the Court is referring here. Plaintiffs are hereby warned not to replead unless they can satisfy this requirement of conclusiveness. Should they choose to replead and fail to make sufficient allegations, this Court will entertain a motion by defendants for sanctions.

*Id.* at 1205.

Since Judge Walker issued his summary judgment opinion, this Court has issued two opinions, the later of which nullified the earlier because of an intervening change in the law.[3]

Plaintiffs now return and aver that as a result of defendants' wrongful conduct, their investments are worthless, and consequently seek judgment in the amount of their investments (less cash distributions), consequential damages, interest, costs and disbursements and punitive damages.

Defendants argue that plaintiffs' Second Amended Complaint fails to comply with Judge Walker's Order of March 7, 1990, fails to plead fraud with particularity, and fails to plead causation. In addition, defendants contend that plaintiffs' common law fraud and breach of fiduciary duty claims should be dismissed.

### Discussion

#### I. *Failure to Comply with the Court's Previous Ruling*

##### A. Misrepresentation in the Offering Materials

Defendants vigorously assert that plaintiffs' Second Amended Complaint does not comply with the Court's instructions. Defendants note that the Second Amended Complaint raises three claims: (1) a § 10(b) violation alleging prospectus and brochure fraud by both the Indian Wells defendants and Hutton; (2) common law fraud against both the Indian Wells defendants and Hutton on the same grounds as the first count; and (3) breach of fiduciary duty against Hutton only.

Defendants contend that insofar as Counts I and II allege misrepresentation in the offering materials, these counts are clearly in violation of Judge Walker's Order of March 7, 1990. The Court agrees. After a careful examination of the offering materials, Judge Walker found:

> Despite the existence of the statements pointed to by plaintiffs, the court concludes that the offering materials taken as a whole "bespeak caution" and sufficiently disclose the relevant risks of investment. Thus, with regard to the stan-

---

**3.** In an Opinion and Order dated October 18, 1991, this Court dismissed plaintiffs' Section 10(b) claim as time barred in accordance with the Supreme Court's decision in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* — U.S. —, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). *See Brown v. Hutton Group,* 775 F.Supp. 692, 695 (S.D.N.Y.1991). The Court applied *Lampf* retroactively pursuant to the Supreme Court's decision in *James B. Beam Distilling Co. v. Georgia,* — U.S. —, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), which was decided on the same day as *Lampf.* Because of the absence of complete diversity, this Court also dismissed plaintiffs' state law claims, declining to exercise

pendent jurisdiction. *See Brown,* 775 F.Supp. at 695.

On December 19, 1991, Congress amended the Exchange Act by enacting Section 27A to modify the retroactive effect of *Lampf.* Section 27A provides for reinstatement, upon motion of plaintiffs, of Section 10(b) actions dismissed under *Lampf,* provided that they were commenced prior to June 19, 1991 and had been timely filed according to the statute of limitations applicable on June 19, 1991. Plaintiffs moved for restatement of their Section 10(b) claims pursuant to Section 27A and this Court granted plaintiffs' motion in an Opinion and Order dated April 27, 1991.

dard misrepresentation claim, the Court concludes that the offering materials are not misleading as a matter of law, or, to the same effect, that plaintiffs' reliance on certain portions of the materials was not reasonable as a matter of law. Summary judgment for defendants is therefore appropriate on this claim.

*Brown,* 735 F.Supp. at 1200. Therefore, those portions of the Second Amended Complaint that again allege misrepresentations in the offering materials are dismissed.

### B. The Fatal Flaw Theory

■ In paragraph 8 of the Second Amended Complaint, plaintiffs make three allegations which, they assert, establish defendants' knowledge that the partnership was inexorably doomed. These "three flaws" cited by plaintiffs are that (1) the properties were acquired on terms which result in an excessive ratio of production costs to revenue; (2) these properties had low and declining production levels, therefore making it impossible for the capital of the partners to be preserved; (3) these properties were purchased at premium prices.

In Judge Walker's Opinion and Order, plaintiffs' burden in repleading was clearly articulated. For their "fatal flaw" claim to succeed, "plaintiffs would have to allege some specific facts which were known to defendants and which would *conclusively* establish that the partnership was doomed. Specific problems known to defendants regarding particular properties, or specific economic/market facts known to defendants and not the rest of the market, might suffice." *Brown,* 735 F.Supp. at 1204. The three fatal flaw allegations delineated by plaintiffs clearly do not meet this standard.

### 1. *Excessive Ratio of Working Interest to Revenue Interest*

The first allegation made by plaintiffs, that the defendants must have known the project was doomed to failure because of the "excessive ratio" of production cost to revenue, is essentially a rehash of a previous allegation.

In paragraph 18(f) of the Amended Complaint, plaintiffs alleged:

As a result of the high ratio of production costs that necessarily would be paid by the partnership as compared to the revenues that could be earned by the partnership, it would take most of the best production years of the partnership's field to generate enough cash flow just to allow the limited partners to recoup their initial investment, and that, as a consequence, the increasing natural production decline in the partnership's field would coincide with the period when the partnership was at last in a position to begin showing a profit from its fields, thereby severely limiting or eliminating the profit potential for the partnership.

In granting defendants' Rule 9(b) motion on the Amended Complaint, the Court referred to the allegation of paragraph 18(f) as "just a dressed-up version of their general allegation that economic circumstances dictated that the partnership never had any chance of success." *Brown,* 735 F.Supp. at 1205. The Court further stressed that the allegation of paragraph 18(f), even if true, did not establish that the partnership was certainly doomed.

In paragraph 15 of the Second Amended Complaint, plaintiffs essentially reiterate paragraph 18(f) of the Amended Complaint, charging that:

"[f]rom the properties already acquired or identified for acquisition, defendants knew that the ratio of working interest to net revenue interest conclusively demonstrated that the Partnership was doomed. In legitimate oil and gas ventures that ratio is slightly greater than one (working interest approximates net revenue interest plus some addition for royalty interest) and never exceeds two. The Partnership's average net revenue interest in its oil producing properties was 2.68 percent to 1.08 percent and its average net revenue interest for gas producing properties was 3.65 percent to 5.37 percent. The Partnership's average working interest, however, was seven to eight times higher than indicated by the net revenue interest. These facts were

known to the defendants prior to selling plaintiffs' Partnership interests and prior to the time the Partnership offering closed. They were not known to plaintiffs or the market generally, and were never disclosed to plaintiffs.

Although paragraph 15 discusses some numbers purported to be "net revenue interest," plaintiffs never identify which property or properties any of these figures reflect. Nor do plaintiffs provide figures for the actual working interest; instead they merely state a conclusion that the working interests are "seven to eight times higher than indicated by net revenue interest." Such a pleading falls far short of alleging specific facts supporting an inference of knowledge, on the part of defendants, that the partnership was destined to fail.

Moreover, as with the allegation in the Amended Complaint, plaintiffs' "excessive ratio" claim of paragraph 15, even if true, would not establish that the partnership was doomed to fail. Plaintiffs' analysis is meaningless because it never takes into account the actual dollar amounts involved.

The plaintiffs' claim is based upon the fact that the instant investment did not return a profit. An essential consideration in determining the profitability of an oil and gas producing venture is the selling price of oil and gas. Kelkar Aff. at ¶ 6.[4] Thus, in order to charge defendants with foreknowledge of the ultimate unprofitability of the instant venture, plaintiffs would have to allege either that (1) even at the highest oil and gas prices realistically imaginable, the venture would not be profitable or (2) that defendants had a unique prescience with respect to future oil and gas prices that would have allowed them to predict the unprofitability of the venture. Plaintiffs have not made any such allegations.

Accordingly, plaintiffs' claims as to the "excessive ratio" of working interest to revenue interest are insufficient on their face to establish that defendants knew the venture was doomed.

### 2. Low and Declining Production Levels

Plaintiffs also attribute to defendants knowledge of "low and declining production levels" in the lands acquired in the subject venture. Second Am.Cmplt. at ¶ 8. Plaintiffs further claim that the properties acquired were "depleted and had been discarded or rejected by other oil companies," *Id.* at ¶ 13, and that due to these low production levels "there was no possibility that the properties could generate sufficient product and revenues to enable plaintiffs to recoup even plaintiffs' capital." *Id.* at ¶ 14.

Nowhere in the Second Amended Complaint do plaintiffs quantify or even define what they mean by "low and declining production levels" or describe why and by whom these properties had been "discarded or rejected." In fact, the Second Amended Complaint fails to identify any specific property to which the claim of low and declining production levels is applicable.

As stated in the Prospectus, the subject partnership was formed for the purpose of acquiring existing properties. Thus, with regard to the assertion that the properties acquired were "discarded or rejected," the fact that these properties were available for purchase necessarily means that the owner was willing to sell them. Plaintiffs' use of the pejorative terms "discarded or rejected" rather than "sold" does not supply the missing allegations of fact.

Plaintiffs' claim that the properties had "low and declining production levels," fares no better. Oil and natural gas are non-

---

4. In response to the affidavit of Dr. Balmohan Kelkar submitted by defendants, plaintiffs have submitted the affidavit of Dr. Frederick Murray, who states that the price of oil is not the determinative factor of the success of a venture. Not only is this statement never adequately explained by Murray, but also it does not constitute a denial that the price of oil and gas plays some significant role in the success of an oil

and gas venture. In any event, even if Murray's conclusory assertions were correct, they would have no bearing on the Court's conclusion, stated above, that plaintiffs' excessive ratio contentions fall far short of alleging specific facts supporting an inference of knowledge, on the part of defendants, that the partnership was destined to fail.

renewable resources; the level of production of every well must eventually decline as the underground reserve is exploited. Thus, every producing well is, in some sense, "depleted."

The Second Amended Complaint adds no substance to the offhand, conclusory references to "steadily declining production levels" found in the Amended Complaint. Am.Cmplt. at ¶ 18. Because of the generic nature of plaintiff's assertions as to low and declining production levels, the Court finds that these allegations are insufficient to support an inference of scienter.

### 3. *Premium Purchase Prices*

Plaintiffs' third basis for claiming that defendants knew the subject venture would fail is that the properties were acquired for "purchase prices at premium levels." Rather than explicating what is meant by "premium levels," the only other mention of this allegation in the Second Amended Complaint merely recites: "In fact, as set forth above, the Partnership only purchased oil and gas properties at premium prices and not at any reduced prices!" Second Am.Cmplt. at ¶ 19.

This assertion is misleading because there is nothing "set forth above," that is, in previous portions of the Second Amended Complaint, that indicates how plaintiffs arrived at the conclusion that "premium" prices were paid for the properties. In fact, plaintiffs fail even to indicate the prices paid for any specific property, much less how defendants should have known that the price was excessive.

The purchase price allegation is thus the barest of all the assertions in the Second Amended Complaint. Moreover, as with plaintiffs' "excessive ratio allegation," the premium price claim affects profitability only in relation to the revenue produced by the property and thus cannot support a claim of knowledge of impending failure without a highly detailed pleading.

Taken together, plaintiffs' assertions simply do not satisfy the requirement, articulated by Judge Walker, of showing a "specific flaw peculiar to this partnership, such as known problems with certain properties, or some specific economic facts known only to one of the defendants and not to the rest of the market." *Brown,* 735 F.Supp. at 1202–03. Because it fails to meet this requirement, the Second Amended Complaint will be dismissed.

## II. *Failure to Plead Fraud with Particularity*

### A. Applicable Legal Standard

■ Defendants argue persuasively that in addition to failing to comply with the Order of March 7, 1990, the Second Amended Complaint fails to comply with Fed. R.Civ.P. Rule 9(b). The Court recognizes that there is certain degree of redundancy in undertaking a separate Rule 9(b) analysis here since this Court has found, in the previous section, that plaintiffs have failed to comply with Judge Walker's Order, which was itself based upon an application of Rule 9(b) to the Amended Complaint. The Court nonetheless undertakes a brief Rule 9(b) analysis in order to emphasize the deficiencies of the Second Amended Complaint.

Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The specificity requirement of Rule 9(b) has been found to serve several purposes: "(1) to provide a defendant with fair notice of the plaintiff's claim, (2) to protect a defendant from harm to his or her reputation or goodwill, and (3) to reduce the number of strike suits." *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir. 1989). While Rule 9(b) allows "conditions of mind" to be averred generally, plaintiffs must nonetheless allege facts which give rise to a strong inference that defendants possessed the requisite fraudulent intent. *Cosmas,* 886 F.2d at 12–13.

■ To be sufficient under Rule 9(b), a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements. *See Goldman v. Belden,* 754 F.2d 1059, 1069–70 (2d

Cir.1985). Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.

## B. First Claim for Relief

Plaintiffs' First Claim in the Second Amended Complaint is defective under Rule 9(b) in numerous respects. First, plaintiffs fail to provide sufficient particularity as to the alleged facts and circumstances surrounding the fraud. As noted above, plaintiffs' assertions as to "excessive ratios," depleted properties, and premium purchase prices are merely generalized, speculative and conclusory statements that fail to point to any specific property. Moreover, as to the premium pricing and inappropriate ratio claims, plaintiffs fail to quantify their arguments, omitting any reference to specific dollar amounts involved and thereby rendering their assertions meaningless.[5]

Second, plaintiffs also fail to satisfy their obligation of stating specifically the fraud committed by each defendant.[6] The Second Amended Complaint "is replete with vague accusations against 'the defendants'" without reference to specific parties or specific acts. *Natowitz v. Mehlman,* 542 F.Supp. 674, 676 (S.D.N.Y.1982); *see* Second Am.Cmplt. ¶¶ 8–11, 15, 25, 28–29, 33, 37.

Plaintiffs maintain that it is enough simply to articulate generically the functions performed by the separate Hutton and India Wells affiliates, recombine the defendants into two broad groups—Hutton and Indian Wells—and then make conclusory allegations of fraudulent activity by both groups together. The Court does not agree.

Third, even if plaintiffs had sufficiently delineated the acts of each defendant and the facts and circumstances surrounding the alleged fraud, the Second Amended Complaint would fail absolutely under Rule 9(b) because of plaintiffs' inability to establish knowledge on the part of defendants.

Plaintiffs aver that they have made a sufficient showing by alleging (1) that the Hutton and Indian Wells defendants organized, promoted and sold the partnerships, acted as general partners and knew that the structure and substance of the partnership was flawed; (2) that the Hutton and Indian Wells defendants issued the prospectus and brochure knowing that the properties acquired were flawed; and (3) that Hutton and Indian Wells knew that because of these flaws, the partnership was doomed. Plaintiffs further cite *Cosmas* and *Goldman* in support of their assertions.

Plaintiffs' contentions are, however, without merit. The Second Amended Complaint is again a classic example of "fraud by hindsight" which cannot support a Section 10(b) claim. *See, e.g., Denny v. Barber,* 576 F.2d 465, 470 (2d Cir.1978). As Judge Friendly set forth in *Denny,* "there still must be more than vague allegations that, as shown by subsequent developments, the corporation's true financial picture was not so bright in some respects as its annual reports had painted and that the defendants knew or were reckless in failing to know, this." *Id.* at 470.

Here, as noted above, defendants would have had to be clairvoyant to discern the flaws which plaintiffs claim establish defendants' knowledge. More than this, at the time plaintiffs bought their partnership interests, the Prospectus clearly stated that no properties had been identified for acqui-

---

**5.** Plaintiffs' reliance on, *inter alia, Nicholas v. Poughkeepsie Savings Bank/FSB,* Fed.Sec.L.Rep. (CCH) ¶ 95,606, 1990 WL 145154 (S.D.N.Y.1990) and *Cohen v. Goodfriend,* 642 F.Supp. 95, 102 (E.D.N.Y.1986) is misplaced. In contrast to the instant case, plaintiffs in each of these decisions provided numerous specific allegations regarding fraudulent activities committed by the defendants. *See Nicholas,* Fed.Sec.L.Rep. (CCH) at 97,838–839; *Cohen,* 642 F.Supp. at 97–98.

**6.** Relying, *inter alia,* on *DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, (2d Cir.1987), plaintiffs insist that they have met their burden. However, *DiVittorio* provides plaintiffs little succor. In that case, the court actually dismissed the majority of defendants because of plaintiffs' failure to link them with the alleged misleading statements. *See id.* at 1248–49.

sition. Even if it is true, as plaintiffs' allege, that a small percentage of the partnership's capital had been committed for the acquisition of specific properties prior to the issuance of the Prospectus, it would be impossible to attribute to defendants knowledge of flaws in properties that had not yet been acquired. In essence, plaintiffs allegations amount to a claim that defendants knew prior to purchasing or even identifying the vast majority of properties, that these as yet unknown future purchases were destined to be unprofitable—in other words, that defendants knowingly made losing investments. This would require them to have been not merely dishonest but malicious, indeed stupidly malicious, because loss of the investors' money would foreseeably result in litigation against them. Such allegations are too preposterous to warrant the attention of the court.

Nor is the Court persuaded by plaintiffs' recycled allegations that the experience of the Hutton Defendants in allegedly similar oil and gas ventures and in the securities field is sufficient to support a strong inference that they knew or should have known that the partnership was doomed. These allegations, found in ¶¶ 7, 27–28, 40–49, 53, and 57 of the Second Amended Complaint, are virtually identical to the allegations found in ¶¶ 7–8, 13–15, 20, 29, 38–39 of the Amended Complaint. In rejecting these allegations, Judge Walker noted that although in some cases, such as *Cosmas* and *Goldman,* allegations of experience have been found sufficient to support a strong inference that defendants knew or should have known some fact, the fact at issue in those cases, unlike the instant case, "was reasonably susceptible of being known." *Brown,* 735 F.Supp. at 1204. The Court finds Judge Walker's reasoning equally applicable to the Second Amended Complaint.

## C.  Claims as to Secondary Liability

### 1.  *Conspiracy*

■ In the Second Amended Complaint, plaintiffs apparently attempt to state a claim for conspiracy to commit fraud. *See* Second Am.Cmplt. ¶ 7. At a minimum, a claim for conspiracy to commit fraud requires: (i) an agreement between the conspirator and the wrongdoer and (ii) a wrongful act committed in furtherance of the conspiracy. *See Bresson v. Thomson Mckinnon Sec., Inc.,* 641 F.Supp. 338, 348 (S.D.N.Y.1986).

■ Citing *Rich–Taubman Associates, Inc. v. Stamford Restaurant Operating Co.,* 587 F.Supp. 875, 879 n. 5 (S.D.N.Y. 1984), plaintiffs argue that courts may infer a conspiracy from indirect evidence and that this Court should do so here. However, *Rich–Taubman,* a case in which the court was able to infer the existence of a conspiracy from evidence of a coordinated scheme of kick backs in the construction industry, is plainly inapplicable here. As the *Bresson* court noted "a bold-faced allegation of a conspiracy to violate the security law ... is plainly insufficient." *Bresson,* 641 F.Supp. at 349. The Second Amended Complaint is so devoid of any substantive allegation concerning what agreements, if any, were made among the defendants that the entire conspiracy allegation appears to have been little more than an afterthought on the part of plaintiffs. Accordingly, their attempt to state a claim for conspiracy is completely inadequate and fails under Rule 9(b).

### 2.  *Controlling Person Liability*

■ In an attempt to support their claim for controlling person liability under Section 20 of the 1934 Act, plaintiffs cite this Court's decision in *Borden, Inc. v. Spoor Behrins Campbell & Young, Inc.,* 735 F.Supp. 587 (S.D.N.Y.1990), which emphasized that a plaintiff need not allege scienter or culpable participation, only control by status, to state a Section 20 claim. However, that decision and numerous others also state the axiomatic proposition that it is impossible to state a claim for secondary liability under Section 20 without first stating a claim for some primary violation of the security laws on the part of the controlled party. *See, e.g., id.* at 588; *Goodman v. Shearson Lehman Bros. Inc.,* 698 F.Supp. 1078, 1086 (S.D.N.Y.1988); *The Limited, Inc. v. McCrory Corp.,* 645

F.Supp. 1038, 1046 (S.D.N.Y.1986). Because plaintiffs have not stated a claim for any primary violation here, the claim for controlling person liability must also fail.[7]

### Pendent Jurisdiction

Plaintiffs acknowledge that there is not complete diversity with defendants. Second Amended Complaint ¶ 1. Thus, this Court cannot exercise diversity jurisdiction of over plaintiffs' remaining state law claims. Nor does this Court choose to exercise pendent jurisdiction over plaintiffs' remaining claims since the federal-law claims have been dismissed at an early stage of the litigation. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988); *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Mayer v. Oil Field Systems Corp.,* 803 F.2d 749, 756–757 (2d Cir.1986); *Goldman v. McMahan, Brafman, Morgan & Co.,* 706 F.Supp. 256, 263 (S.D.N.Y.1989); *Goodman v. Shearson Lehman Bros. Inc.,* 698 F.Supp. 1078, 1087 (S.D.N.Y.1988); *Roebuck v. Guttman,* 678 F.Supp. 68, 69 (S.D.N.Y.1988).

### Conclusion

For the reasons stated, defendants' motion to dismiss is granted. Because plaintiffs have already had three opportunities to state their claim in accordance with Rule 9(b), the dismissal is with prejudice.

SO ORDERED.

---

**7.** Because this Court has granted defendants' motion on other grounds, the Court does not reach defendants' separate contentions that plaintiffs allegations of mismanagement are not actionable under Section 10(b) or that plaintiffs have failed to plead causation.