Dave **SHELDON**, Plaintiff,

v.

Jay **VERMONTY**, et al., Defendants.

No. CIV.A. 98–2277–JWL.

United States District Court,
D. Kansas.

Dec. 10, 2001.

Darren K. Kearns, Overland Park, KS, for plaintiff.

Jane L. Stafford, Patrick J. Whalen, Spencer, Fane, Britt & Browne, Kansas City, MO, Mario Aieta, Garvey, Schubert & Barer, New York City, for Jay Vermonty, Carmen Vermonty, Gershon Tannenbaum, Manhattan Transfer Registrar Company and Hector Cruz.

Norman Siegel, Stueve Helder Siegel LLP, Kansas City, MO, for Charles Schwab & Co., Inc.

John W. Shaw, Timothy S. Millman, Berkowitz, Feldmiller, Stanton, Brandt, Williams & Shaw, LLP, Norman Siegel, Kansas City, MO, for Olde Discount Corporation.

John W. Shaw, Timothy S. Millman, Berkowitz, Feldmiller, Stanton, Brandt, Williams & Shaw, LLP, Kansas City, MO, Tanya Biller, Miriam G. Bahcall, Ungaretti & Harris, Chicago, IL, Amy E. Bauman, Stueve Helder Siegel LLP, Kansas City, MO, for Principal Financial.

### *MEMORANDUM AND ORDER*

LUNGSTRUM, United States Magistrate Judge.

This matter is before the Court on the following motions: (1) Plaintiff's Motion to Amend His Complaint Pursuant to FRCP 15 (doc. 127); (2) Defendants' request for Rule

11 sanctions based on Plaintiff's filing of his Motion to Amend (doc. 177); (3) Defendants' Motion to Amend Scheduling order (doc. 152); (4) Defendants' Motion to Strike Plaintiff's Amended Final Witness and Exhibit List (doc. 171); and (5) Plaintiff's Motion and Amended Motion to Compel and related requests for sanctions (doc. 141, 170).

## I. Nature of the Case and Procedural Background

Plaintiff brings this action against various Defendants for violations of the Securities Act of 1933 ("Securities Act"), the Securities Exchange Act of 1934 ("Exchange Act"), and the Kansas Securities Act. The claimed violations allegedly occurred in connection with Plaintiff's purchase of shares of stock in Power Phone, Inc. ("PP"), both before and after its failed merger with TMC Agroworld, Inc. ("TMC"). Plaintiff also asserts various causes of action arising under state law.

Defendants Jay Vermonty, Carmen Vermonty, Gershon Tannenbaum, and Hector Cruz filed a motion to dismiss the Third Amended Complaint on March 4, 1999. The District Court granted the motion to dismiss, finding that none of the claims asserted in the Third Amended Complaint stated a cause of action upon which relief could be granted. *See* doc. 65. Later, the Court denied Plaintiff's request for reconsideration and motion to amend his complaint, and directed the entry of judgment against Plaintiff under Fed.R.Civ.P. 54(b). *See* doc. 79.

Plaintiff appealed the District Court's rulings, and on October 30, 2000, the Tenth Circuit Court of Appeals upheld in part and reversed in part the District Court's entry of judgment. *See* Sheldon v. Vermonty, Nos. 99–3202, 99–3389, 2000 WL 1616436 (10th Cir. Oct.30, 2000), *order revised and reh'g denied*, 2000 WL 1774038 (Dec. 4, 2000). As to Defendants Jay Vermonty, Carmen Vermonty, and Gershon Tannenbaum, the Tenth Circuit reversed the dismissal of the following claims: section 12(a)(2) Securities Act claim (Count I); section 15 Securities Act controlling person liability claim (Count III); section 20 Exchange Act controlling person liability claim (Count IV); section 10(b) Exchange Act claim (Count V); Kansas Securi-

ties Act claim (Count VI); unjust enrichment (Count VII); common law fraud (Counts VIII, IX and X); and conspiracy (Count XII). The Tenth Circuit upheld the dismissal of the section 12(a)(1) Securities Act claim (Count I), the section 12 and 13 Exchange Act claims (Count II), and the breach of fiduciary duty claim (Count XI). The Tenth Circuit also upheld the dismissal of all claims against Defendant Cruz. In addition, the Tenth Circuit ruled that the District Court did not abuse its discretion in denying Plaintiff's request to amend. The Tenth Circuit held, however, that "the issue of amendment as to these claims is best left to the district court's discretion on remand." *Sheldon*, 2000 WL 1774038, at *5.

After remand, a scheduling conference was held before the undersigned Magistrate Judge on April 23, 2001. The Court set May 4, 2001 as the deadline for filing any motions to amend. *See* Scheduling Order, doc. 126. Plaintiff filed his Motion to Amend on that date. Defendants filed a response, opposing the motion. On September 14, 2001, the Court asked Plaintiff to provide the Court and Defendants with a copy of his Proposed Fourth Amended Complaint with notations or highlighting indicating what allegations were added. The Court also gave the parties the opportunity to submit supplemental briefs. The Court has received Plaintiff's highlighted version of his proposed Fourth Amended Complaint and Defendants' supplemental opposition to the Motion to Amend.

The Court is now prepared to rule on the Motion to Amend and the other pending pretrial motions.

## II. Plaintiff's Motion to Amend (doc. 127) and Defendants' Request for Rule 11 Sanctions Relating Thereto (doc. 177)

### A. The Proposed Amendments

In his Proposed Fourth Amended Complaint Plaintiff adds numerous allegations to the sections entitled "Parties," "Jurisdiction," "Venue," and "Factual Allegations." In addition, he alleges new facts in support of those claims that the Tenth Circuit ruled should not have been dismissed. Plaintiff asserts that these allegations were added to "bolster

his fraud allegations with additional specificity." Mot. to Amend, Doc. 127 at 2. In addition, Plaintiff has revised Count II to add two new claims arising under sections 14 and 15 of the Exchange Act.[1] Finally, Plaintiff has deleted those claims that the Tenth Circuit held were properly dismissed.

## B. Standard for Ruling on a Motion to Amend

■ Rule 15 of the Federal Rules of Civil Procedure allows one amendment of the complaint before a responsive pleading is served or within twenty days after service of the complaint. Subsequent amendments are allowed by leave of court or by written consent of an adverse party, and leave to make subsequent amendments "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The Supreme Court has emphasized that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The decision to grant leave to amend a complaint, after the permissive period, is within the trial court's discretion and will not be disturbed absent an abuse of that discretion. *Woolsey v. Marion Labs., Inc.*, 934 F.2d 1452, 1462 (10th Cir. 1991). The court should deny leave to amend only when it finds "undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir.1993).

■ A court may deny a motion to amend as futile if the proposed amendment would not withstand a motion to dismiss or if it otherwise fails to state a claim. *Lyle v. Commodity Credit Corp.*, 898 F.Supp. 808, 810 (D.Kan.1995) (citing *Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir.1992)). Thus, the court must analyze a proposed amendment as if it were before the court on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Dismissal of a claim under Rule 12(b)(6) is appropriate only when it appears beyond a doubt that a plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief. *Conley v.*

*Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir.1998).

## C. Analysis of Plaintiff's Proposed Amendments

Defendants attack the overall quality of the proposed amended complaint and urge the Court to deny Plaintiff leave to amend on that basis. Defendants also object to the inclusion of two new claims in proposed Count II on the basis that Plaintiff unduly delayed in asserting those claims and because amendment would be futile.

### 1. Overall quality of the Proposed Fourth Amended Complaint

Defendants assert that the proposed Fourth Amended Complaint is incomprehensible and that it contains "[a]ccusations, unsupported inferences, and references to information yet to be discovered" that "are jumbled together in a lengthy, repetitive, and confusing manner." Defs.' Mem. in Opp., Doc. 129 at 2. Defendants complain that the proposed complaint repeatedly states that information provided by Defendants " 'was known to be false' without alleging any facts to support an inference of fraudulent intent." *Id.*

The Court is not persuaded by Defendants' argument that the proposed amendments should not be allowed because of the overall quality of the pleading. While the Tenth Circuit noted the poor quality of the Third Amended Complaint, it nevertheless held that the majority of Plaintiff's claims were "adequate to survive defendants' motion to dismiss." *Sheldon v. Vermonty*, Nos. 99–3202, 99–3389, 2000 WL 1774038, at *6 (10th Cir. Dec.4, 2000). With the exception of the new claims asserted in Count II (which will be discussed below), Plaintiff's Fourth Amended Complaint merely attempts to expand Plaintiff's general factual allegations and to provide more detail in support of those claims that were not dismissed. The Tenth Circuit has already held that those claims are sufficiently pled to withstand a

---

1. Count II previously asserted claims under sections 12 and 13 of the Exchange Act. As noted

above, the Tenth Circuit upheld the District Court's dismissal of those claims.

motion to dismiss. The Court will therefore grant Plaintiff leave to amend to assert additional factual allegations in support of those claims.

### 2. Inclusion of new causes of action under sections 14 and 15 of the Exchange Act

Defendants object to Count II, which pleads two new claims arising under sections 14 and 15 of the Exchange Act. Defendants argue that leave to amend to plead these claims should be denied for three primary reasons. First, Defendants assert that granting Plaintiff leave to add a section 14 claim would be futile. Defendants argue that the proposed section 14 claim contained in Count II fails to state a claim upon which relief can be granted because Plaintiff has failed to plead that Defendants solicited, or attempted to solicit, any proxies as required by section 14. Second, Defendants assert that granting Plaintiff leave to add a section 15 claim would be futile because no private cause of action exists under that section of the Exchange Act. Third, Defendants contend that Plaintiff has unduly delayed in pleading both his section 14 and 15 claims, which will result in prejudice to Defendants.

### a. The proposed section 14 and 15 claims

Proposed Count II asserts claims arising under sections 14 and 15 of the Exchange Act as follows:

> The defendants failed to be properly registered as brokers and dealers under the [19]34 Act for their solicitation and selling of the "PP"/"TMC" stock. The defendants effected the mergers with false information and by making false statements in the proxy solicitations to effect these mergers. The activities alleged in this Fourth Amended Complaint constitutes "fraud on the market" and those same activities were done in a grossly, wantonly, willful negligent manner by defendants. Defendants employed improper selling practices and had a fraudulent basis for their selling recommendations. The named defendants knew or should have known about the false asset and contract information before knowingly or negligently assisting in the sale of the "PP"/"TMC" stock for profit

which assisted in the perpetration of the fraud. This activity violates section § 14 and § 15 of the Securities Exchange Act of 1934 15 U.S.C. §§ 78n & 78o and amendments thereto.

Proposed Fourth Amended Complaint, ¶ 40.a.

### b. Futility of adding the section 14 claim

Defendants assert that allowing Plaintiff leave to amend to add his section 14 Exchange Act claims would be futile because that section applies only to proxy solicitations. Defendants contend that the proposed Fourth Amended Complaint "does not include any factual allegations that can be read to suggest that defendants ... solicited proxies or sought in anyway to effect the procurement, withholding or revocation of a proxy." Def's Mem. in Opp., doc. 177 at 4 (quotations omitted).

Section 14(a) of the Exchange Act provides as follows:

> (a) Solicitation of proxies in violation of rules and regulations

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

15 U.S.C. § 78n.

While the Court agrees with Defendants that Section 14(a) deals only with proxy solicitations, the Court disagrees with Defendants' assertion that the proposed Fourth Amended Complaint fails to assert any allegations that Defendants solicited proxies in violation of the rules. Paragraph 18.i. of the Fourth Proposed Amended Complaint alleges that "[f]alse information was proffered by

defendants in proxy statements [2] and other false information was provided to the shareholders concerning [the merger between PP and TMC] by defendants." (Emphasis added.) In addition, paragraph 40.a. alleges that "defendants effected the mergers with false information and by making false statements in the *proxy solicitations* to effect these mergers." (Emphasis added.) Clearly, Plaintiff has alleged that Defendants made false statements in proxy solicitations. The Court therefore rejects Defendants' argument that leave to amend should be denied for failing to allege this essential element.

### c. Futility of adding the section 15 claim

Defendants also oppose the addition of the section 15 claim on the basis of futility. Defendants contend that "[n]o court has recognized a private right of action under § 15 of the Securities Exchange Act." Defs.' Mem. in Opp., Doc. 177 at 3.

Plaintiff's proposed Complaint does not specify the subsection of section 15 under which he is suing. It appears to the Court, however, that Plaintiff is attempting to assert a cause of action under either subsection (a)(1) or (c)(1) of Section 15 of the Exchange Act, or both. Subsection (a)(1) prohibits any broker or dealer from using the mails or any instrumentality of interstate commerce to effect a transaction in securities or to induce or attempt to induce the purchase or sale of any security unless the broker is registered with the Securities Exchange Commission. 15 U.S.C. § 78o(a)(1). Subsection (c)(1)(A) prohibits any broker or dealer from using the mails or any instrumentality of interstate commerce to effect a transaction in securities or to induce or attempt to induce the purchase or sale of any security "otherwise than on a national securities exchange of which it is a member" by means of any deceptive or fraudulent device. 15 U.S.C. § 78o(c)(1)(A).

Contrary to what Defendants assert, some courts have recognized a private cause of action under section 15. *See, e.g., Landry v. Hemphill, Noyes & Co.*, 473 F.2d 365, 368 n. 1 (1st Cir.1973) (recognizing that claim for churning is an actionable civil cause of action under section 15(c)(1)); *Davis v. Avco Corp.*, 371 F.Supp. 782, 789 (N.D.Ohio 1974) (plaintiff may sue unregistered broker or dealer under section 15). Those courts, however, are in the clear minority. The overwhelming majority of courts have held that section 15 does not give rise to a private cause of action. *See, e.g., Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1578 (9th Cir.1990) (holding that section 15 in general does not create private cause of action); *Asch v. Philips, Appel & Walden, Inc.*, 867 F.2d 776, 777 (2d Cir.1989) (holding that section 15(c)(1) does not create a private cause of action and stating that there is "little or nothing else to indicate that Congress intended to create such a remedy"); *Brannan v. Eisenstein*, 804 F.2d 1041, 1043 n. 1 (8th Cir.1986) (affirming district court's dismissal of claim because section 15 does not confer a private right of action); *Goodman v. Shearson Lehman Bros., Inc.*, 698 F.Supp. 1078, 1086 (S.D.N.Y.1988) (refusing to recognize civil cause of action under section 15(a)(1)); *Bull v. American Bank and Trust Co. of Pa.*, 641 F.Supp. 62, 65 (E.D.Pa.1986) (dismissing section 15(a)(1) claim because no private right of action recognized); *Shotto v. Laub*, 632 F.Supp. 516, 518 n. 2 (D.Md.1986) (dismissing section 15(c)(1) claim because no private cause of action recognized); *Olsen v. Paine Webber, Jackson & Curtis, Inc.*, 623 F.Supp. 17, 18 (M.D.Fla.1985) (same). In fact, no court considering the issue since the Supreme Court articulated the test for implying a cause of action in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), has recognized a private cause of action under section 15.[3]

---

**2.** Courts often use the term "proxy statements" and "proxy solicitations" synonymously in the context of section 14 Exchange Act claims. *See, e.g., J.I. Case Co. v. Borak*, 377 U.S. 426, 434–35, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) (victims of "deceptive proxy statements" are entitled to remedial relief under section 14 of the Exchange Act); *Lone Star Steakhouse v. Adams*, 148 F.Supp.2d 1141,1150 (D.Kan.2001) ("The central

issue [with respect to plaintiff's section 14 claims] is whether or not defendant's ... Proxy Statements contain false or materially misleading information.").

**3.** The district court in *Goodman v. Shearson Lehman Bros., Inc.*, 698 F.Supp. 1078, 1086 (S.D.N.Y.1988) noted that, in the decade following the *Cort* decision, no court considering the

■■ This Court agrees with the over-whelming majority of courts which have held that neither section 15(a)(1) nor 15(c)(1) of the Exchange Act provides for a private right of action. As the Supreme Court has made clear, "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) (quoting *Cannon v. University of Chicago,* 441 U.S. 677, 688, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)). The issue of whether a statute creates a cause of action, either expressly or by implication, is a matter of statutory construction. *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 16, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). When the statute does not expressly provide for a private remedy, the Court must determine whether there is an indication of Congressional intent to create a private cause of action. *Id; Southwest Air Ambulance v. City of Las Cruces,* 268 F.3d 1162, 1169 (10th Cir.2001).[4]

■■ Section 15 does not expressly provide for any private cause of action. Thus, this Court must determine whether Congress intended to create any private remedy. With respect to section 15(c)(1), the Court finds no Congressional intent to create a private remedy. The Court agrees with the Second Circuit's *Touche Ross* analysis of section 15(c)(1) in *Asch v. Philips, Appel & Walden, Inc.,* 867 F.2d 776, 777 (2d Cir.1989). There, the Second Circuit held that "there is little . . . to indicate that Congress intended to create such a remedy." It also recognized that "[t]he legislative history is silent, and a private cause of action would not further the purposes of the statute since a broader pri-

vate right already exists under section 10(b) of the Exchange Act." *Id.*

This Court also finds no Congressional intent to create a private remedy under section 15(a)(1). Again, the legislate history is silent. Also, the Court finds it significant that various subsections of section 15 provide for action by the Securities Exchange Commission relating to the registration of brokers and dealers. The fact that Congress provided for means by which violations of various provisions of section 15 are to be enforced weighs heavily against any suggestion that Congress might have intended to create a private right of action against a broker or dealer who failed to properly register in violation of the statute.

In light of the above, the Court holds that Plaintiff's proposed section 15 claim does not state a claim upon which relief can be granted. Allowing Plaintiff leave to add that claim to his lawsuit would be futile. The Court will therefore deny Plaintiff leave to add a section 15 Exchange Act claim.

*d. Undue delay and prejudicial effect*

Defendants assert that allowing Plaintiff to add his section 14 and 15[5] claims at this date will be severely prejudicial to Defendants. Although this case has been on file since 1998, a scheduling conference was held on August 17, 2001, at which time the Court set new deadlines for filing motions to amend and completing discovery. Plaintiff filed his Motion to Amend by the May 4, 2001 amendment deadline and more than two months before the close of discovery. Unfortunately, the Court was not able to take up Plaintiff's motion until after discovery had closed. Recognizing that the Court might grant Plaintiff leave to amend after the close of discovery, Defendants filed a motion on Au-

issue had recognized a private cause of action under section 15. This Court has been unable to locate any decision recognizing such a cause of action in the years following the *Goodman* decision, and Plaintiff has not provided the Court with any such authority.

**4.** The Tenth Circuit noted in *Southwest Air Ambulance* that the Supreme Court's 1979 *Touche Ross* decision refined the *Cort* test for determining when to imply a private right of action. Under *Touche Ross,* emphasis is placed on the

second *Cort* factor, *i.e.,* whether there is any indication that Congress intended to create a private cause of action. *Southwest Air Ambulance,* 268 F.3d at 1169 (citing *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979)).

**5.** Because the Court has decided to disallow the section 15 claim on the basis of futility, the Court need not address the undue delay argument only in connection with the section 14 claim.

gust 17, 2001 to reopen discovery for the limited purpose of serving written discovery requests relating to the amendments. *See* Motion to Amend Scheduling Order, doc. 152. The Court will grant Defendants' motion to allow them to pursue the discovery they have requested (*see* section III, below), and this should protect Defendants from suffering any potential prejudice.

### D. Summary of Ruling on Plaintiff's Motion to Amend

In summary, the Court will deny Plaintiff's Motion to Amend (doc. 127) to the extent he seeks to add a claim arising under section 15 of the Exchange Act. The Court will grant Plaintiff's Motion to Amend in all other respects. Within *ten (10) days* of the date of filing of this Order, Plaintiff shall revise the proposed Fourth Amended Complaint to remove his section 15 claim and shall file and serve the original Fourth Amended Complaint on all Defendants (including those Defendants against whom he is seeking the entry of default). Defendants shall plead in response to the Fourth Amended Complaint within *ten (10) days* of service of the Fourth Amended Complaint.

### E. Defendants' Request for Rule 11 Sanctions (doc. 177)

In their supplemental response to Plaintiff's Motion to Amend, Defendants ask the Court to impose Rule 11 sanctions on the basis that Plaintiff's motion to add a section 15 Exchange Act claim "is frivolous on its face." Doc. 177. Although the Court has denied Plaintiff leave to amend to add a section 15 claim, the Court does not find the imposition of Rule 11 sanctions to be warranted. Defendants' request for Rule 11 sanctions will therefore be denied.

### III. Defendants Motion to Amend Scheduling Order (doc. 152)

As noted above, Defendants have requested that they be allowed to reopen discovery to serve requests for production and admissions in the event the Court grants Plaintiff leave to amend his complaint. The Court will grant Defendants' request. Defendants shall have *ten (10) days* from the date of

service of the Fourth Amended Complaint upon them to serve their requests for production and requests for admissions. The scope of the requests shall be limited to the new allegations contained in the Fourth Amended Complaint.

### IV. Defendants' Motion to Strike Plaintiff's Amended Final Witness and Exhibit List (doc. 171)

Defendants ask the Court to strike Plaintiff's Amended Final Witness and Exhibit List (doc. 161) (the "List"). Defendants contend that the List should be striken for failure to comply with Fed. R.Civ.P. 26(a)(3) and D.Kan. Rule. 16.2(e)(1) and that Plaintiff should not be allowed to introduce into evidence those exhibits and witnesses not properly identified and/or exchanged. In the event the Court declines to strike the List, Defendants request that the Court order Plaintiff to supplement his List to (1) include a proper synopsis of the expected testimony and a statement as to whether the testimony will in person or by deposition, and (2) separately and adequately identify each exhibit.

The Scheduling Order entered in this case on April 23, 2001 instructed the parties to file "final witness and exhibit lists ... in the form prescribed by D.Kan. Rule 16.2(e)." *See* doc. 126, ¶ III.a. The Scheduling Order does not specifically mention Fed.R.Civ.P. 26(a)(3) disclosures.

Rule of Practice 16.2(e)(1) provides in pertinent part:

**(e) Witness and Exhibit Lists and Disclosures.** At times ordered by the court under Fed.R.Civ.P. 16(b) and (c)(7), the parties will exchange and file lists of proposed witnesses and exhibits.

**(1) Content of Lists and Disclosures.** Witness lists shall set forth the address of each witness, as well as the subject matter, and a brief synopsis of the substance of the facts to which each witness is expected to testify. Witnesses and exhibits listed by one party may be called or offered by the other party. Witnesses and exhibits not identified and exchanged as required by the court's order shall not be permitted to testify or be received in evidence, respec-

tively, except by agreement of counsel or upon order of the court. . . . The provisions of Fed.R.Civ.P. 26(a)(3) and 26(a)(4) shall apply to disclosures. The parties' disclosures shall designate deposition testimony (transcript or videotaped) by reference to specific pages and lines or other appropriate method for videotape testimony, and also shall specifically identify specific deposition exhibits to be used. Witnesses expected to testify as experts shall be do designated.

D.Kan. Rule 16.2(e)(1).

## A. Failure to Comply with Fed.R.Civ.P. 26(a)(3)

The Court will first address Defendants' argument that Plaintiff's List fails to comply with Fed. R.Civ.P. 26(a)(3). Defendants assert that Plaintiff's List is not in compliance because it does not indicate (1) whether each witness will testify in person or by deposition; and (2) whether the witness is "expected to testify" or "may be called if the need arises." The Court agrees that Plaintiff's List does not comply with Rule 26(a)(3) in these respects; however, the Court will not require that it do so. The Court is aware that D.Kan. Rule 16.2(e)(1) is subject to varying interpretations and could be interpreted to require exhibit and witness lists to comply with Fed.R.Civ.P. 26(a)(3). The Court, however, will not interpret it in that manner, and will not require compliance with the Rule at this time. At the pretrial conference the Court will announce the deadline for submitting Rule 26(a)(3) disclosures. Accordingly, Defendant's motion will be denied to the extent it asserts that Plaintiff's List should be striken for failure to comply with Rule 26(a)(3).

## B. Failure to Comply with D.Kan. Rule 16.2(e)(1)

The Court will now proceed to address Defendants' argument that the List should be striken for failure to comply with the general provisions of D.Kan. Rule 16.2(e)(1).

### 1. Witnesses

With respect to witnesses, Defendants argue that the List is deficient as to its identi-

fication of witnesses and their anticipated testimony. Defendants note that for some witnesses, no "subject matter" and/or no "brief synopsis of the of the substance of the facts" to which the witness is expected to testify, are provided. For other witnesses, Plaintiff provides only the individual's name and indicates that he is currently looking for the individual's address and/or telephone number. Defendants also assert that for many witnesses Plaintiff's "synopsis" is not a summary at all, but merely a "catch-all" phrase such as, "information on the fraudulent scam and how it was orchestrated."

The Court will deny Defendant's request that these witnesses be striken from the List. The Court will, however, order Plaintiff to supplement his List in the following respects. First, Plaintiff shall make a good faith effort to determine and provide the address and telephone number of any witness for whom this information is lacking. If, after undertaking a good faith effort, Plaintiff is still unable to obtain this information, Plaintiff may still list the individual and continue his search for the information. At this stage of the litigation the Court will not strike a witness for lack of a telephone number and/or address. This information will, however, be required at the time the parties' Rule 26(a)(3) disclosures are submitted. Second, Plaintiff shall list only individuals, and each individual shall be specifically named. For example, Plaintiff shall identify by name each of the "Directors and Officers of Big Apple Consulting" who may be a witness rather than lumping them together as a group. By way of further example, Plaintiff shall name the individuals associated with Cactus Marketing and Silver River Marketing rather than merely listing the corporate entities themselves. For each such individual named, he shall provide telephone numbers and addresses (subject to the good-faith rule discussed immediately above) and provide the required subject matter and synopsis of anticipated testimony.

■ For those witnesses whom Plaintiff has indicated have "information on the fraudulent scam and how it was orchestrated" the Court will not require any additional explanation of the anticipated testimony.

### 2. Exhibits

Defendants also argue that Plaintiff's List is deficient as to its identification of exhibits. Defendants first complain that Plaintiff has failed to provide them with copies of several of the exhibits. and contends that those exhibits should be striken from the List. The Court disagrees. At this point in time, there is no requirement that the exhibits have been exchanged. Admittedly, in most cases the listed documents would have already been produced in response to a request for production or in the course of making Rule 26(a)(1) initial disclosures. There is, however, no independent requirement that all documents listed on a final exhibit list have been exchanged at the time the list is filed. The District's Form Pretrial Order states that the parties are required to exchange copies of exhibits "at or before the time they are marked" prior to trial. *See* Form Pretrial Order, ¶ 12.2. Exhibits are typically marked two to four weeks before trial, and a deadline for marking exhibits is announced at the final pretrial conference. Such a deadline will be announced at the pretrial conference in this case. The motion to strike exhibits based on the failure to provide them to Defendants will be denied

■ Defendants next complain that some of the exhibits listed are a collection of unidentified documents, *e.g.*, Plaintiff's "loss calculations" and "statements of defendants and supplements," or, in some instances, not even documents but a compilation of unidentified information, *e.g.*, "costs and attorney fees" and "overview of Investors and supplements." The Court will refuse to strike these exhibits. The Court will, however, require Plaintiff to supplement his exhibit list to *specifically identify each document.* The generic categorization or grouping together of documents will not be allowed. To the extent possible, each document shall be identified by date, author, addressee, and subject matter so as to avoid any confusion or uncertainty as to what document is being listed. Furthermore, Plaintiff shall refrain from listing mere information as opposed to discrete documents or items. For example, Plaintiff will not be allowed to list an item such as "overview" or "costs and attorney fees."

### C. Summary of Ruling on Motion to Strike

Defendant's Motion to Strike Plaintiff's Amended Exhibit and Witness List is denied to the extent it seeks to strike all or a portion of Plaintiff's Amended Exhibit and Witness List. The Motion will, however, be granted in part, to the extent it seeks alternative relief. Plaintiff shall have ***twenty (20) days*** from the date of filing of this Order to revise and supplement his Amended Exhibit and Witness List, as set forth herein. Defendants shall have ***ten (10) days*** from the date of service of the revised and supplemented List to file any objections.

### V. Plaintiff's Motion and Amended Motion to Compel and Requests for Sanctions (doc. 141, 170)

Plaintiff filed his initial Motion to Compel on July 16, 2001 (doc. 141). At the September 5, 2001 conference, the Court directed the parties to confer again in an attempt to resolve those issues. The Court directed Plaintiff to file an amended motion to compel if the parties were unable to resolve their disputes. Counsel for the parties conferred but apparently were not able to resolve all issues. Even though Plaintiff agreed to narrow several of the discovery requests, Defendants still contend they are objectionable. Plaintiff has filed an Amended Motion to Compel with respect to certain of the revised document requests and one interrogatory. *See* Plaintiff's Amended Motion to Compel, filed September 19, 2001 (doc. 170). Because the Amended Motion supplants the first motion, the Court will deny as moot the first Motion to Compel and the request for sanctions contained therein (doc. 141). The Court will now proceed to address the merits of the Amended Motion to Compel (doc. 170).

### A. Requests for Production

### 1. Revised Request No. 32

In his Amended Motion, Plaintiff indicates that there is still a dispute as to revised Request No. 32. The Court notes, however, that Request No. 32 (revised or otherwise) was never addressed in Plaintiff's *initial* Mo-

tion to Compel. Thus, to the extent Plaintiff is now moving to compel a response to revised Request No. 32 in his *Amended* Motion, the motion is untimely. *See* D.Kan. Rule 37.1 (motion to compel must be filed within thirty days of the default or service of the response; any objection to the default, response or objection deemed waived). The Amended Motion to Compel will therefore be denied as to revised Request No. 32.

### 2. *Revised Request Nos. 33, 34, and 36*

With respect to revised Request Nos. 33, 34, and 36, a dispute remains as to the time period covered. Request No. 33, as revised, seeks documents relating to proceeds Defendants received from sales in securities of PP, TMC, or Dominican Cigar for remuneration for any type of work performed for said companies during the time period January 1, 1995 to the present. Request No. 34, as revised, requests documents that relate to bank accounts of Defendants in which deposits were made of profits, commissions, or remuneration of any type for work performed for PP, TMC or Dominican Cigar during the time period January 1, 1995 to the present. Request No. 36, as revised, requests documents that reflect or relate to communications between Defendants and Plaintiff or between Defendants and officers or directors of the companies issuing the stock at issue in this case, for the time period January 1, 1995 to the present.[6]

Defendants object to the time period as being unreasonable and irrelevant. Defendants argue that the requests should be limited to the period between May 15, 1996 and April 21, 1997, that being the time period during which Plaintiff may have received information relevant to his decision to purchase the securities at issue. As Defendants point out, Plaintiff alleges that he first purchased the securities at issue on July 1, 1996 and last purchased them on April 21, 1997. *See* Fourth Amended Complaint, ¶ 14. He alleges that he first heard of PP "in mid-year of 1996." *Id.*, ¶ 28. In addition, he testified in his deposition that he first spoke to one of the Defendants in June 1996. Because Plaintiff's claims are for fraud in connection with his purchase of the securities at issue, Defendants argue that the only relevant time period is May 15, 1996 through April 21, 1997.

Plaintiff, on the other hand, contends that the time period January 1, 1995 to the present is relevant to show Defendants' alleged "involvement throughout the process of the several mergers" and "their ownership and control in this ongoing 'scam.'" Am. Mtn. to Compel, Doc. 170 at 3–4. Plaintiff argues that he has alleged that Defendants were involved in the "scam" from its inception and that they continued to be involved even after Plaintiff sold his stock.

The Court will overrule Defendants' objection to the time period. Relevancy is broadly construed, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.[7] *Scott v. Leavenworth Unified School Dist. No. 453*, 190 F.R.D. 583, 585 (D.Kan.1999); *Etienne v. Wolverine Tube, Inc.*, 185 F.R.D. 653, 656 (D.Kan.1999). A request for discovery should be allowed "unless *it is clear* that the information sought can have *no possible* bearing" on the claim or defense of a party. *Scott*, 190 F.R.D. at 585 (quoting *Snowden v. Con-*

---

6. Plaintiff states that Request No. 36 was revised as follows: "qualified specific to Dave Sheldon, defendants including the directors and officers of Power Phone, TMC, DCGR [Dominican Cigar], etc." Ex. D at p. 2, attached to doc.170. Because this explanation is cryptic, the Court has relied on Defendants' description of the revised request, which description Plaintiff has not disputed.

7. Scott and *Etienne* were decided under the prior version of Fed.R.Civ.P. 26(b)(1), which provided that parties could obtain discovery regarding any matter "that is relevant to the *subject matter* involved in the pending action." Fed.R.Civ.P. 26(b)(1) (emphasis added.) Rule 26(b)(1) was amended effective December 1, 2000, to provide that parties may obtain discovery regarding any matter "that is relevant to the *claim or defense of any party*." *Id.* (emphasis added). For good cause shown, the court may also order discovery of "any matter relevant to the *subject matter* involved in the action." *Id.* (emphasis added). Despite the change in Rule 26(b)(2), the standard enunciated in *Scott* and *Etienne* remains good law.

*naught Lab.,* 137 F.R.D. 336, 341 (D.Kan. 1991)) (emphasis added by *Scott*).

 Applying these principles, the Court concludes that the time period contained in revised Request Nos. 33, 34, and 36 is proper. Documents relating to that entire time period may be relevant to show Defendants' creation of the fraudulent scheme and their ongoing participation in it. Those documents may also be relevant to support Plaintiff's claims that Defendants knew that the representations they made to Plaintiff in connection with his purchase of the securities were false.

Accordingly, the Court will grant the Amended Motion to Compel with respect to revised Request Nos. 33, 34, and 36. Within *twenty (20) days* of the date of the filing of this Memorandum and Order Defendants shall produce all documents responsive to revised Request Nos. 33, 34, and 36. Said production shall take place at the offices of Plaintiff's counsel or at any other location agreed upon by the parties. To the extent Defendants have no documents responsive to any of the revised requests, Defendants shall provide a written response to that effect.

### B. Interrogatory No. 9

Interrogatory No. 9 is the only interrogatory that remains at issue. Plaintiff states that this interrogatory "is still in dispute specific to bank account information and the expanded time period." Am. Mtn. to Compel, doc. 170 at 3. The Court finds the interrogatory virtually incomprehensible, and, on its face, does not appear to be seeking information that is relevant to Plaintiff's claims or Defendants' defenses. Plaintiff has failed to meet his burden to show how the interrogatory seeks relevant information. *See Pulsecard, Inc. v. Discover Card Serv., Inc.,* 168 F.R.D. 295, 309 (D.Kan.1996) (when the relevancy of a discovery request is not apparent on its face, its proponent has the burden to show the discovery relevant). The Court will therefore deny the Amended Motion to Compel as to Interrogatory No. 9.

### C. Plaintiff's Request for Sanctions

Plaintiff seeks to recover the costs and attorney fees he incurred in bringing his Amended Motion to Compel. The Court is granting in part and denying in part the Amended Motion to Compel. Under the circumstances, the Court does not find the imposition of sanctions under Fed.R.Civ.P. 37(a)(4)(C) to be warranted. Plaintiff's request for sanctions will be denied, and each party shall bear his own costs and expenses incurred in connection with the Amended Motion to Compel.

### D. Summary of Ruling on Motions to Compel

Plaintiff's initial Motion to Compel and request for sanctions (doc. 141) are denied as moot. Plaintiff's Amended Motion to Compel (doc. 170) is granted as to revised Request Nos. 33, 34, and 36, and denied as to revised Request No. 32 and Interrogatory No. 9. Plaintiff's request for attorney fees and costs incurred in connection with the Amended Motion to Compel is denied. Each party shall bear his own expenses and fees with respect to the Amended Motion to Compel.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Amend (doc. 127) is denied in part and granted in part, as set forth herein. Within *ten (10) days* of the date of filing of this Order, Plaintiff shall revise the proposed Fourth Amended Complaint to remove his proposed claim arising under section 15 of the Securities Exchange Act of 1934 and shall file and serve the original Fourth Amended Complaint on all Defendants, including those against whom Plaintiff is seeking the entry of default. Defendants shall plead in response to the Fourth Amended Complaint within *ten (10) days* of service of the Fourth Amended Complaint.

IT IS FURTHER ORDERED that Defendants' Request for Rule 11 Sanctions (doc. 177) based on Plaintiff's filing of his Motion to amend is denied.

IT IS FURTHER ORDERED that Defendants' Motion to Amend Scheduling Order (doc. 152) is granted. Defendants shall have *ten (10) days* from the date of service of the Fourth Amended Complaint upon them to serve their requests for production and requests for admissions. The scope of the requests shall be limited to the new allega-

tions contained in the Fourth Amended Complaint.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Plaintiff's Amended Final Witness and Exhibit List (doc. 171) is denied to the extent it seeks to strike all or a portion of Plaintiff's Amended Exhibit and Witness List. The motion will be granted to the extent it seeks alternative relief. Plaintiff shall have *twenty (20) days* from the date of filing of this Order to revise and supplement his Amended Exhibit and Witness List, as set forth herein. Defendants shall have *ten (10) days* from the date of service of the revised and supplemented Amended Exhibit and Witness List to file objections. **IT IS FURTHER ORDERED** that Plaintiff's initial Motion to Compel and request for sanctions (doc. 141) are denied as moot. Plaintiff's Amended Motion to Compel (doc. 170) is granted as to revised Request Nos. 33, 34, and 36, and denied as to revised Request No. 32 and Interrogatory No. 9. Plaintiff's request for attorney fees and costs incurred in connection with the Amended Motion to Compel is denied. Each party shall bear his own costs and fees incurred in connection with the Amended Motion to Compel.

**IT IS FURTHER ORDERED** that all documents required to be produced by Defendants as a result of this Memorandum and Order shall be produced *within twenty (20) days of the date of the filing of this Memorandum and Order.* Said production shall take place at the offices of Plaintiff's counsel or at any other location agreed upon by the parties.

**IT IS SO ORDERED.**