James B. McCOY, et al., Plaintiffs,

v.

WHIRLPOOL CORP. et al., Defendants.

Nos. 02–2064–KHV, 02–2229–KHV,
02–2230–KHV, 02–2231–KHV.

United States District Court,
D. Kansas.

April 14, 2003.

Dale L. Davis, Springfield, MO, Karen A. Eager, Lynn R. Johnson, Shamberg, Johnson & Bergman, Chtd., Kansas City, MO, for plaintiffs.

Hal D. Meltzer, Baker, Sterchi, Cowden & Rice, L.L.C., Overland Park, KS, James S. Owens, Jr., Mary A. Palma, Nall & Miller, L.L.P., Atlanta, Ga, for defendants.

## MEMORANDUM AND ORDER

WAXSE, United States Magistrate Judge.

In its Memorandum and Order dated March 5, 2003 (doc. 101), this Court ruled on various portions of the Motion to Compel Discovery (doc. 69) filed by Plaintiff and deferred ruling on limited portions of such Motion pending receipt of additional information from Defendants as requested by the Court. The Court is now in receipt of the requested information is ready to rule.

At the February 19, 2003 hearing, the parties summarized the disputed discovery requests into the following categories: (1) Wire diagrams and design drawing; (2) Field Returns (burned or damaged in fire and returned), Field Return Photos and Field Re-turn Files; (3) Service Records from Sears; (4) Claims and Lawsuits for New Generation premium dishwashers manufactured prior to 1993 and for all New Generation base dishwashers; (5) documents, remnants and videos from any induced burn testing; and (6) personal records. The Court already has ruled on production of documents and things within categories (1), (4) and (5); thus, this Memorandum and Order will discuss categories (2), (3) and (6) in turn.

### 2. Field Returns

This category of documents and tangible items consists of photos, files and burned or damaged dishwashers/component parts that were burned in a fire and returned to Whirlpool. Defendant Whirlpool states it has produced the requested information and tangible things for all New Generation premium dishwashers that included some sort of allegation that the fire started in the door area of the dishwasher. Whirlpool has not, however, produced the requested information and tangible things for New Generation base model dishwashers or for Kitchen Aid models. Whirlpool argues these documents and things are not relevant and, even if they were marginally relevant, the burden imposed in producing them outweighs any such marginal relevance.

Relevancy is broadly construed, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.[1] When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Rule 26(b)(1), or (2) is of such marginal relevance that the potential harm the discovery may cause would outweigh the presumption in favor of broad disclosure.[2] Conversely, when rele-

---

1. *Sheldon v. Vermonty,* 204 F.R.D. 679, 689–90 (D.Kan.2001) (citations omitted).

2. *Scott v. Leavenworth Unified School Dist. No. 453,* 190 F.R.D. 583, 585 (D.Kan.1999).

vancy is not apparent on the face of the request, the party seeking the discovery has the burden to show the relevancy of the request.[3]

■ The Court finds the field returns and associated documentation for all New Generation base dishwashers[4] that either include some sort of allegation that the fire started in the door area of the dishwasher or that the fire's origin is unknown are both relevant on their face. Plaintiffs' expert has testified that the difference in the amount of electrical current running through the base model versus the premium model dishwasher is a factor in the premium model fires. Thus, the Court finds comparison of burn and melting patterns from a base model to a premium model is relevant on its face to the expert's testimony.

Given this finding, it is now Whirlpool's burden to establish the requested discovery (1) does not come within the broad scope of relevance as defined under Rule 26(b)(1), or (2) is of such marginal relevance that the potential harm the discovery may cause would outweigh the presumption in favor of broad disclosure. In support of its argument that the requested discovery is not relevant, Whirlpool argues the requested discovery involves dishwashers that are not substantially similar to the McCoy dishwasher. As for Plaintiffs' need to compare the models to determine the differences in current, Whirlpool argues it already has produced the UL listing for the premium model, which demonstrates that the current running through the premium model is appropriate; thus, the requested discovery is cumulative.

The Court is not persuaded by Whirlpool's arguments. First, Plaintiffs state they do not seek the requested discovery in order to establish the base and premium models are substantially similar, but instead seek to compare the base and premium models. The disputed discovery request deals with field returns for base models having fires that

potentially started in the door. The Court finds Plaintiffs have a right to discover information, documents and tangible things to support their expert's opinion that the current in the two models is a factor with regard to these overheating and fire issues.

Because the Court finds the requested discovery comes within the broad scope of relevance as defined under Rule 26(b)(1), the only remaining argument presented by Whirlpool in resisting production of the requested information is that such information is of such marginal relevance that the burden to produce the requested information outweighs the presumption in favor of broad disclosure. When asked by the Court at the hearing about the extent of the burden such production would impose, Whirlpool responded it was uncertain as to the number of base model field returns existed. Given this uncertainty, the Court ordered Whirlpool to submit to the Court a written letter estimating the number of base model burned or damaged dishwashers/component parts that were burned in a fire and returned to Whirlpool, as well as the number of accompanying files and/or photos. The Court requested this information in order to accurately balance the projected burden against relevancy of the information sought.

Whirlpool recently notified the Court in writing that are approximately ten based model burned or damaged dishwashers burned in a fire and returned to Whirlpool. In balancing the relevancy of the requested information against the alleged burden, the Court concludes the relevancy of the information and things requested outweighs any burden imposed in making the ten dishwashers and accompanying files and photos available for inspection; thus, the Court will grant Plaintiffs' Motion to Compel on this issue.

### 3. *Service Records*

■ Plaintiffs have requested defendant Whirlpool and defendant Sears be compelled

---

**3.** *Steil v. Humana Kansas City, Inc.*, 197 F.R.D. 442, 445 (D.Kan.2000).

**4.** At the hearing, Plaintiffs orally withdrew their request for Kitchen Aid field returns.

to produce all service records that relate to—or in any manner pertain to—any incident of overheating and/or fires in the area of the electrical front panel of all New Generation premium model dishwashers manufactured from May 1993 through December 2001. In support of their request, Plaintiffs state service records produced by Whirlpool document door latch microswitches that have failed due to excessive heat, which disproves Whirlpool's contention that the new terminal and new crimping methodology incorporated post-May 1993 resolved the excessive resistance heating problem. Plaintiffs state it anticipates there will be numerous service records from Sears that will demonstrate and document the same thing.

In further support of their request, Plaintiffs argue state they currently possess testing data that demonstrates the micro switch sometimes fails in the closed position—as opposed to the open position—pursuant to excessive heating. In order to disprove Defendants' position that the micro-switch and ETCO terminal solved all potential fire problems, Plaintiffs assert they have the right to discover the context in which a micro-switch was serviced and, if the micro-switch failed, whether it did so in an open or closed position.

Defendant Whirlpool noted in the hearing that it has produced all of the requested service records. Defendant Sears, however, has not produced any of the requested documents, stating it would be unduly burdensome for it to identify and produce the requested information and, even if it did, the results are only marginally valuable to the issues presented in this lawsuit. As a result, Defendant Sears requests the Court refrain from ordering production of these service records. In the event the Court should grant Plaintiffs' request here, Defendant Sears alternatively requests the Court order Plaintiffs to pay any and all costs associated with identification and production of the requested information.

When asked by the Court at the hearing about the extent of the burden upon Sears to produce the service records requested, Sears responded it was uncertain of the time or expense that would be involved in responding to requested discovery and had no estimate of the costs associated with such identification and production. Given this uncertainty, the Court ordered Sears to submit to the Court a written letter estimating the time and expense that would be involved in identifying and producing the service records requested. The Court requested this information in order to accurately balance the projected burden against relevancy of the information sought.

Counsel recently notified the Court in writing that Sears anticipates it will take approximately three to four weeks—or roughly 160 man hours—to search a database of five different part numbers in 840 different models in order to locate the requested information. Sears further estimates that—due to the technical and confidential nature of the information and the database—the search necessarily must be conducted internally and the cost associated with such search will be approximately $10,400.00.

In balancing the relevancy of the requested information against the alleged burden, the Court concludes the relevancy outweighs the estimated financial burden in searching for and producing the requested information. In coming to this conclusion, the Court takes judicial notice of the fact that in the year 2001, Sears earned $735 million in net income.[5]

## 6. Personal Files

■ In its Memorandum and Order dated March 5, 2003 (doc. 101), this Court ordered Whirlpool to ascertain whether current employees or former employees possess documents responsive to this request and, if they did, to produce such documents to Plaintiffs. Whirlpool has since notified the Court that three current employees have files owned by Whirlpool but maintained by such employee in his or her office and they will produce information within such files relating to door

---

5. 2001 Sears, Roebuck & Co. Annual Report at p. 5.

latch/door switch assembly (and/or any component parts thereof) of dishwasher models that are substantially similar to the McCoy model. Whirlpool further states it is in the process of contacting former employees to ascertain whether they took responsive information and documents with them when they left the company and, if they did, will produce the documents at that time.

Although the Court acknowledges Whirlpool's objection to producing documents within the files located dealing with dishwashers and parts that are not substantially similar to the McCoy dishwasher, the Court is not persuaded by Whirlpool's arguments that documents relating to such New Generation base model dishwashers are not relevant. Again, Plaintiffs do not seek the requested discovery in order to establish the base and premium models are substantially similar, but instead seek to compare the base and premium models. Regardless of whether such information ultimately is admissible at trial,[6] the Court finds Plaintiffs have a right to discover such documents within the files found to support their expert's opinion with regard to overheating and fire issues.

Because the Court finds the requested discovery comes within the broad scope of relevance as defined under Rule 26(b)(1), the only remaining argument in resisting production of the requested information is that such information is of such marginal relevance that the burden to produce the requested information outweighs the presumption in favor of broad disclosure. Whirlpool has submitted no affidavit or other proof demonstrating that producing documents within the referenced files for New Generation base model dishwashers—in addition to the New Generation premium model dishwashers—would impose an undue burden. In balancing the relevancy of the requested information against the alleged burden, the Court finds documents and information within the referenced files dealing with New Generation premium *and* base model dishwashers should be produced; thus, the Court will grant Plaintiffs' Motion to Compel on this issue.

### Conclusion

Based on the discussion above, it is ordered that Plaintiffs' Motion to Compel is hereby granted with respect to

1. field returns, defined as documents and tangible items—consisting of photos, files and burned or damaged dishwashers/component parts—that were burned in a fire and returned to Whirlpool;

2. service records that relate to—or in any manner pertain to—any incident of overheating and/or fires in the area of the electrical front panel of all New Generation premium model dishwashers manufactured from May 1993 through December 2001; and

3. documents within personal files (files owned by Whirlpool but in the possession of current or former Whirlpool employees) that relate to the door latch/door switch assembly and/or any component parts of the door latch switch assembly of New Generation premium model and base model dishwashers.

IT IS SO ORDERED.

---

6. The Court notes that the touchstone to Plaintiffs' discovery requests is not that such discovery will result in evidence which is, or even may be, admissible at trial, but rather that such discovery is "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).